# McKay & Roche v. Southern Bell Telphone Co., *et al.*

*Action for Damages for Injury to Property.*

1. *Telephone company; injury resulting from fallen wire; plea not answering charge of negligence.*—In an action against a telephone company and an electric street railroad company to recover damages to property caused by contact with a telephone wire, which had broken and fallen across the railroad company's trolley wire, a plea of the telephone company that its wire was in good order and condition, and properly located and maintained, cannot be accepted as a denial of the allegations of the complaint that, known to the defendants, the telephone wire was frail and weak, not securely fastened to the poles, and liable to break and fall across the trolly wire, and that it was the duty of the defendents to so maintain, guard and protect their wires as to prevent such an occurrence.

2. *Same.*—In an action against a telephone company and an electric street railroad company to recover damages to property caused by contact with a telephone wire, which had broken and fallen across the railroad company's trolley wire, a plea of the telephone company is insufficient, which confesses that it, as well as its co-defendant, after the telephone wire fell across the trolley wire, extending to the ground charged with the dangerous current of electricity, suffered it to be and remain in that condition, causing the injury to plaintiff's property.

3. *Electric street railroad company; injury resulting from fallen wire; when defendant's authority to use electricity is not material.*—In an action against a telephone company and an electric street railroad company to recover damages to property caused by contact with a tel-

[McKay & Roche v. Southern Bell Telephone Co.]

ephone wire, which had broken and fallen across the railroad company's trolley wire, it is not material to the controversy that the railroad company had lawful authority to construct and operate its road with the motive power employed, where, with knowledge that a frail, weak, insecurely fastened telephone wire, liable to fall across its trolley wire, and extend to the ground, carrying a deadly current of electricity to persons and property lawfully passing along the highway, was maintained by another, it took no steps to prevent destructive consequences, but suffered the telephone wire to be and remain lying across its trolley wire, extending to the ground, in conquence whereof plaintiff's property was injured; and a plea of the electric street railroad company setting up such authority presents no defense to the action.

4. *Same; negligence as to condition of wires.*—The fact that an electric street railroad company erected and maintained its wire in the manner that other trolley wires are erected and maintained by many prudent and well managed electric railway companies, conducting the same character of business over and along the streets of other cities, does not justify such street railroad company in knowingly suffering a wire of another company to be suspended over its own, in a condition likely to fall across its own, involving danger to persons and property passing along the street, without providing proper safeguards, or, after the fall of such wire, suffering it to be and remain in that condition.

5. *Telephone company and electric street railroad company; when jointly liable.*—Where an electric street railroad company and a telephone company concurrently maintain two wires, so related to each other, and so erected, that the one is likely to fall across the other, and cause damage to property, and the danger is within the concurrent, common knowledge of both parties, it is the common duty of both to abate the dangerous condition, and both are liable for the consequences of their failure to do so.

6. *Plea of general issue; waiver by defendant of formal proof of fact within the issue.*—The plea of the general issue puts in issue all the material allegations of the complaint, and imposes upon the plaintiff the necessity of proving them; but the defendant may, by his course of conduct on the trial, show to the satisfaction of the jury that he does not really controvert a particular fact strictly within the issue, but waives formal proof thereof; and in such a case it should be left to the jury to say whether it is waived or not.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. J. R. TYSON.

This action was brought by the appellants, McKay & Roche, against the appellees, the Southern Bell Telephone & Telegraph Company and the Mobile Street Railroad Company, to recover damages for the alleged neg-

ligent killing of one horse and the injury of another horse, and for damages to the harness on them, the property of the plaintiffs.

The complaint contained three counts, the substance of which counts are sufficiently stated in the opinion. The demurrers interposed to each of the counts of the complaint were overruled. The pleas of the Southern Bell Telephone & Telegraph Company and the demurrers interposed thereto, are sufficiently stated in the opinion. The Mobile Street Railroad pleaded, first, the general issue to each of the counts, and the following special pleas: "2d. As a plea pleaded separately to each count of said complaint, said defendant says that at the time of the matters and things complained of it had lawful authority to construct and operate an electric railroad over the street where the accident occurred and as such to use and erect trolley wires for the propulsion of its cars, and for the same purpose to cause said trolley wire to be heavily charged with electricity; and this defendant avers that its trolley wire along the street where the accident occurred was erected and maintained in a manner authorized by its charter, and by the ordinance of the city of Mobile granting it a franchise over said street for said purpose, and that an over-head wire maintained and operated by a separate and distinct corporation with which this defendant had no connection, and, without fault on the part of this defendant, broke and fell across this defendant's trolley wire and thereby became charged with electricity and came in contact with plaintiff's horses and caused the injury complained of; and this defendant further avers that it did nothing to cause said wire to so break and come in contact with its said trolley wire nor was it guilty of any negligence that caused or tended to cause the breaking of said over-head wire or its coming in contact with plaintiff's horses."

"3d. For a further plea in this behalf pleaded separately to each count of the complaint, this defendant says that it erected and maintained its trolley wire along the street where the accident complained of occurred, in the manner in which it was authorized to erect and maintain the same, and in the manner in which other trolley wires are erected and maintained by many prudently and well managed electric railway companies conducting the same character of business, which this defendant was

conducting, over and along the streets of other cities, and that other than the erection, maintenance and conduct of its said electric railway in the manner aforesaid, it did nothing that proximately contributed to the injuries complained of.'' The plaintiffs demurred to the second and third pleas of the Mobile Street Railroad Company, on the following grounds: "(1.) Because said plea fails to set out the ordinance of the City of Mobile granting to said defendant a franchise, or so much of said ordinance as prescribes the manner in which defendant should erect its trolley wire. (2.) Because neither the charter of said defendant nor the city ordinance granting said defendant a franchise to erect and maintain its trolley wires on Government street is set out in said plea. (3.) Because neither the charter of said defendant, nor the franchise granted to it by the City of Mobile to erect and maintain its said trolley wires over the streets, affords the said defendant any excuse or defense to plaintiff's said claim against it for its breach of duty and neglect to so maintain, guard and protect its said wire as not to allow said telep one wire, in case it should break and fall to the ground, to come in contact with said trolley wire and become charged with electricity from said trolley wire. (4.) Because said plea professes to be an answer to the whole complaint, and yet it fails to deny or to confess and avoid the gist of the complaint, viz., that it was the duty of said defendant to so maintain, guard and protect its said trolley wire as to not allow said telephone wire, in case it should break and fall to the ground, to come in contact with said trolley wire and become charged with electricity from said trolley wire, and which duty the complaint shows said defendant wholly failed, omitted and neglected to perform, and in consequence thereof plaintiffs were damaged. (5.) Because that it, said defendant, the Mobile Street Railroad Company, had no connection with said Telephone Company, and that the wire of said Telephone Company without any fault of said Railroad Company, broke and fell across said Railroad Company's trolley wire and thereby became charged with electricity, and that said Railroad Company did nothing to cause said wire to so break and come in contact with its trolley wire, nor was guilty of any negligence that caused or tended to cause the breaking of said overhead wire or its coming in con-

tact with plaintiff's horses, is no answer to the complaint that it was the duty of said defendant, the Mobile Street Railroad Company, to so maintain, guard and protect its trolley wire as to not allow said telephone wire, if it should break and fall to the ground, to come in contact with said trolley wire, and become charged with electricity from said trolley wire ; which duty it, said defendant, wholly failed, omitted and neglected to perform.'' The court overruled the demurrers to each of the pleas of both of the defendants, and the plaintiffs separately excepted to the overruling of each of the demurrers.

The plaintiffs filed replications to the pleas of each of the defendants, and duly excepted to the court's sustaining the separate demurrers of each of the defendants interposed to the several replications. The other facts in reference to the pleadings and the rulings of the court thereon are stated in the opinion.

On the trial of the cause, as is shown by the bill of exceptions, the evidence tended to show that the injury complained of occurred at the corner of Government and Lawrence streets, that Government street runs east and west and Lawrence street runs north and south across Government street, and that both said streets are public highways in the city of Mobile ; that the defendant, the Southern Bell Telephone & Telegraph Company, had a telephone wire stretched along Lawrence street, and across Government street, diagonally from the northwest corner to the southeast corner of said streets ; that said telephone wire was stretched across Government street and over and above the trolley wires of the defendant, the Mobile Street Railroad Company ; that said telephone wire and said trolley wires had been put up before August 9th, 1893 ; that said Mobile Street Railroad Company had double tracks on Government street and a trolley wire over each track ; that the cars of said railroad company were propelled by electricity and said trolley wires were heavily charged with electricity for the purpose of supplying the cars with motive power ; that said cars in going west ran on one of the tracks and coming east ran on the other ; that said telephone wire was attached to a pole on the northwest corner of Government and Lawrence streets and on another pole on the east side of Lawrence street about sixty or seventy feet south of Government street ; that on the evening of the 17th of Jan-

[McKay & Roche v. Southern Bell Teleghone Co.]

uary, 1894, said telephone wire which was held with a small wire to an insulator attached to a pole on the east side of Lawrence street, south of Government street had broken loose from its fastening and. fallen across and was lying upon one of said trolley wires and extended down in a kind of a droop or slant from the trolley wire to the ground, and reached the ground about where Lawrence street entered into Government street on the south at which place there was a bridge over the gutter, and about sixty or seventy feet of said telephone wire was lying on the ground along Lawrence street from where it entered into Government street, and from that point it ran up on an incline or kind of droop to the trolley wire and was about the height of a horse's breast over the driveway on the south side of Government street, and became heavily charged with electricity, it received by its contact with said trolley wire—sufficiently charged with electricity to kill a horse; that about dusk on the evening of said 17th of January, 1894, and while said telephone wire was down and charged with electricity, as above stated, plaintiff's servant was in charge of and driving westwardly along the south side of Government street, a pair of fine horses of plaintiffs, drawing a phaeton, also their property, in which phaeton there was at the time, two ladies and said driver; that when appellant's servant with said team had gotten to within a block of the intersection of Government and Lawrence streets, he saw a horse that was drawing a buggy and driven by a white gentleman, fall on the bridge at the entrance of Lawrence street into Government street; that said horse and buggy was coming up Lawrence street from the south; that plaintiff's servant did not know what caused that horse to fall on said bridge, whether it was from a hole in the bridge or what; that plaintiff's servant did not see the telephone wire that was down and lying on and across the trolley wire, nor did he know that said telephone wire was down on the trolley wire, nor did any one call to him, or give him any notice or warning that there was a wire down on the ground charged with electricity; that plaintiff's servant was driving at a pretty rapid trot, and when the horses got opposite to where Lawrence street entered into Government street the right hand horse came in contact with the wire, it striking him under the

breast, and he fell and was almost instantly killed, and the other horse was pulled down, or stepped on the wire and fell, and was badly burned, rendering him valueless; that the damage thus sustained by the plaintiffs was between $500 and $600; that the damage was done by the electricity with which said telephone wire was charged from its contact with said trolley wire.

The plaintiffs, after proving its existence, offered to read in evidence Section 494 of the ordinance of the city of Mobile, which provided for a method of erecting electric light, motor or power conductors when they approached or crossed the line of any fire alarm or police telegraph, telephone or telegraph line in the city of Mobile. The Mobile Street Railroad Company objected to the introduction of said ordinance in evidence, on the ground that the same was immaterial, irrelevant and incompetent. The court sustained this objection and the plaintiff duly excepted. The defendants offered no evidence.

Upon the introduction of all the evidence of the plaintiffs, each of the defendants separately requested the court to give the general charge in its behalf. The court gave each of these charges, and to the giving of each of them the plaintiffs separately excepted.

There were verdict and judgment for the defendants. The plaintiffs appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

L. H. FAITH, for appellants.—The court erred in overruling the plaintiff's demurrer to the 3, 4, 5 and 6 pleas of the defendant Telephone Company. The gist of the complaint was for the failure by both of the appellees to so guard their respective wires as not to allow them to come in contact, if the telephone wire should break and fall. The Telephone Company by these special pleas, admits the failure to guard the wire upon the Railroad Company, without denying that it also owed a duty to appellants and the public in that respect. The pleas do not traverse the allegations of the complaint that it was the duty of both defendants, respectively, to so guard and protect their respective wires as not to allow the telephone wire to fall on the trolley wire, but they set up merely that it was the duty of the railroad to put up guards, &c., which duty it failed to discharge.—

1 Chitty Pleadings, pp. 252, 554 and 518; *Savage v. Walshe*, 26 Ala. 619. And again, the pleas, while they undertake to place the duty of putting up guards between the two wires upon the Railroad Company, admits that that duty had not been discharged by the Railroad Company, and admits also that the unguarded condition of the wires was a constant menace to the lives of persons passing along the streets, &c. "No man can, with impunity, use his own property or exercise any supposed rights or privileges, in such way as to endanger the lives of innocent persons in the exercise of a public right and privilege." The Telephone Company was under no compulsion to keep its weak, frail telephone wire stretched over the unguarded trolley wire of the Railroad Company.—*Mayer v. Thompson*, 104 Ala. 611. Nor does the fact, as set up by the 6th plea, that the telephone wire was put up first, excuse the Telephone Company from using reasonable precautions to keep its telephone wire from falling upon the trolley wire which was put up later. Even if the Telephone Company had priority of right, public security is of infinitely more importance than the question as to which company ought to put up the guard between the wires. *Elec. Light Co. v. Elec. Light & Gas Co.*, 94 Ala. 372.

2. The court erred in overruling plaintiff's demurrer to the second and third pleas of the defendant, the Mobile Street Railroad Company.

Even if the Railroad Company did construct its railroad in the manner as authorized by its charter, and the city ordinance, and as other prudently managed railroads are constructed, and that it had no connection with, or control over the company that constructed and maintained the telephone wire that was stretched above the trolley wire, yet if the telephone wire was known to the Railroad Company to be a weak, frail wire and liable to break and fall, and in case it should fall it would fall on the trolley wire and conduct the electricity therefrom to the ground and endanger the lives of persons passing along the street, the Railroad Co. would be under a common law obligation to so use that which it had control and management of as not to allow it to injure another; an obligation to guard against the electricity escaping from the trolley wire to the hurt of others.—*Mayer v. Thomp-*

*son,* 104 Ala. 611 ; *St. Louis Bridge Co. v. Miller,* 28 N. E. Rep. 1091 ; *Hayes v. Mich. Cen. R. R. Co.,* 111 U. S. 228 ; *Koelsch v. Philadelphia Co.,* 25 Atl. Rep. 522.

3.   Whether or not the use of guard wires or other barriers placed between the telephone wire and the trolley wire is useful and will keep the wires from coming in contact, can hardly be said to be a question to be determined by expert testimony nor by what other railroad companies may or may not do in that particular—it is not a question of science, but one of legal or moral obligation, of common observation, upon which the law or uneducated mind is capable of forming judgment.—*Milwaukee R. R. Co. v. Kellogg,* 94 U. S. 469 ; *Mayer v. Thompson,* 104 Ala. 611. Whether the failure to put guards between the trolley wire and the over head wires was negligence or not, ought at least to have been left to the jury, and ought not to have been decided by the court as no neglect of duty because the charter or franchise did not require them to be put up, nor because many railroad companies did not put them up.—*O'Brien v. Tatum,* 84 Ala. 186 ; *United Elec. R. Co. v. Shelton,* 14 S. W. Rep. 863.

4.   Again, said pleas, while professing to answer the complaint wholly fails to traverse, or confess and avoid, the very gist of the complaint, namely, knowledge by the defendant of the likelihood of the telephone wire falling upon the trolley wire and probable danger that would result therefrom, and the duty of the railroad company to guard against such apparent danger which it omitted to do.—*White v. Yarbrough,* 16 Ala. 109 ; *Werth v. Montgomery L. & I. Co.,* 89 Ala. 373 ; *Savage v. Walshe,* 26 Ala. 619 ; *Gibson v. Marquis,* 29 Ala. 668. The pleas relying upon a license or ordinance of the city and the defendant's charter as authority for constructing the trolley wires, and averring that the railroad and trolley wires were constructed as authorized by said charter and ordinance, are defective in not setting out so much of the charter, or ordinance as may have prescribed how the railroad and trolley wires should be constructed.— *Hardy v. Branch Bank,* 15 Ala. 722. As the courts do not take judicial knowledge of private charter, or municipal ordinances, and, if it was incumbent on the defendant to introduce in evidence its charter, and the city ordinance to support its plea, good pleading would seem

to require it to aver so much of them in its plea as prescribed the manner of how the railroad and trolley wires should be constructed.—*Kohn v. Haas*, 95 Ala. 478; *Furhman v. Mayor of Huntsville*, 54 Ala. 263.

5. The Telephone Company having its wire stretched along the public street over a trolley wire charged with electricity, and both companies knowing the liability of the telephone wire to break and fall, it being a small wire and of the size that frequently breaks, and knowing that if it should break it would fall upon the trolley wire which they knew to be charged with electricity, and that in case it should fall, and come in contact with the trolley wire it would conduct the electricity to the ground and endanger the lives of persons passing along the street, it is submitted that both companies were under obligation to use watchful diligence in keeping their respective wires not only in repair, but so guarded as not to come in contact with each other, and they are charged with knowledge of not only every defect in the wires themselves, but of the defective construction and maintenance of their lines of wires without such safe guards as reasonable diligence whould have discovered to them to be necessary to prevent the wires coming in contact. Plaintiffs ought not to be required to discover the particular defect that caused the telephone wire to break nor to bring knowledge of such defect home to said defendants.—*S. & N. R. R. C. v. McLendon*, 63 Ala. 275. Evidence that an Electric Light Company had its line constructed along a street; that a guy wire from one of its poles stretched across the sidewalk, and, charged with electricity from another guy wire crossing the feed wire of a Street Railroad Company, had become detached from a tree to which it had been fastened and was hanging to the ground, and that plaintiff's son was killed by coming in contact with it while walking along the sidewalk, makes a *prima facie* case, and puts on defendant the burden of showing that it was not negligent. *Haynes v. Raleigh Gas Co.*, 19 S. E. Rep. 344; *Arkansas Tel. Co. v. Ratteree*, 21 S. W. Rep. 1059; *Volkmar v. Manhattan R. R. Co.*, 31 N. E. Rep. 870; *Ahern v. Oregon Tel. Co.*, 35 Pac. Rep. 549. Where an iron bar falls from a defendant's elevated railroad, and injures a person in the street below, it will be presumed from the circumstances of the accident, that the defendant was neg-

ligent.—*Hogan v. Manhattan R. R. Co.*, 26 N. Y. 792.

RUSSELL & DESHON, for the Southern Bell Telephone & Telegraph Co.—We insist that the plaintiffs omitted to prove two propositions, which it devolved upon them to prove, under the issues presented by the pleadings; and they were, therefore, not entitled to recover. First, the plaintiffs failed to prove that the defendant, the Southern Bell Telephone and Telegraph Company, owned and had a telephone wire, stretched along Lawrence street and across Government street, diagonally from the northwest corner to the southeast corner of said streets. It is shown that a telephone wire was stretched across Government street, but it is nowhere shown in the testimony set out in the bill of exceptions, that this wire belonged to the Southern Bell Telephone and Telegraph Company. The failure to prove this fact was fatal to the right of plaintiffs to recover in this cause. Second, the plaintiffs failed to make any proof whatever, that the telephone wire in this case was negligently and defectively strung and attached to the poles, when first constructed, and failed to make any proof that it was permitted, by the negligence of the Southern Bell Telephone and Telegraph Company, or its agents, to become out of repair, and, by reason of being out of repair, it broke and fell across the trolley wire, and thereby injured plaintiffs' horses, etc.

GREGORY L. & H. T. SMITH, for the Mobile Street Railroad Co.—The question material to our inquiry, arises upon the general affirmative charge which was given for the defendant. We think that it was properly given for several distinct reasons, viz.: 1st. There was no testimony tending to show that either of the defendants had erected, maintained, or were, in any possible way, connected with either the fallen wire, or the trolley across which it lay. Even should we concede that the Mobile Street Railroad Company owned, maintained, and operated on the day of the accident, that particular trolley wire, and that it was defective for want of guard-wires, the plaintiffs would have failed for want of evidence of the two essential elements. It is perfectly apparent, we think, that it was of vital importance to the plaintiff's cause, to establish the fact that the telephone

wire had been stretched above the trolley wire, and that the trolley wire had been controlled by the defendant railroad company long enough to have enabled the railroad company to have erected guard-wires after the necessity therefor became apparent, and before the time of the accident. The mere fact that the telephone wire did fall across the trolley wire, and cause the accident, was not testimony tending to show that there was negligence on the part either of the Mobile Street Railroad Company, or of the Southern Bell Telephone & Telegraph Company. It may have fallen while being stretched without the knowledge of either company.—*R. R. Co v. Davis*, 91 Ala. 487 ; *U. S. R. Stock Co. v. Weir*, 96 Ala. 402. 2d. But we can not concede that the want of guard-wires constitutes a defect in the appliances of a street railroad company, operated upon the trolley system, as is alleged in the complaint. There was testimony, without contradiction, that about two-thirds of the total number of well constructed, and prudently managed electric railroads; operated upon the trolley system, in this country, maintain the trolley wire without guard-wires, on account of the diversity of opinion existing as to their safety. Such being the case, there can be no negligence in following the judgment of the two-thirds majority of skilled men in this business. Nothing is better settled in Alabama.—*R. R. Co. v. Allen*, 78 Ala, 494; *R. R. Co. v. Allen*, 99 Ala. 367; *R. R. Co. v. Propst*, 83 Ala. 526 ; *R. R. Co. v. Arnold*, 84 Ala. 167; *R. R. Co. v. Hall*, 87 Ala. 708 ; *R. R. Co. v.Jones*,92 Ala. 225; *R.R.Co.v.Moody*, 92 Ala. 286 ; *Holland v. T. C., I. &. R. R. Co.*, 91 Ala. 444.

2. Besides this, the plaintiffs having sued the defendants jointly, no recovery can be had, since the defendants did no joint act. What each did, was a separate act, for which no recovery can be had against them jointly.—*R. R. Co. v. Greenwood*, 99 Ala..510.

3. It is not material that we should consider the correctness of the rulings of the court upon the pleas and demurrers of the Southern Bell Telephone & Telegraph Company, since the judgment may be affirmed as to the Mobile Street Railroad Company, though reversed and remanded as to the other defendant.—Elliott's Appellate Procedure, 487, § 574 ; *Morris v. Sickley*, 33 N. E. Rep. 373 ; *Evans v. Schnider*, 15 S. W. Rep.

220; *Schuster v. Bauman Co.*, 15 S. W. Rep. 259; *Jaffray v. Moss.* 6 So. Rep. 520; *Blum v. Strong*, 6 S. W. Rep. 167; *Hamilton v. Prescott*, 11 S. W. Rep. 548.

HEAD, J.—This is a joint action against the two appellees for damages to property alleged to have been caused by their negligence. The contest seemed to have been largely waged by and between the two defendants, each accusing the other, but the result was victory to both over the plaintiffs.

The complaint shows that the Mobile Street Railroad Company operated an electric street railway along Government street, in Mobile, with the electric motive power supplied by means of an overhead trolley wire, such as is generally in use, which wire was so heavily charged with electricity as to render contact with it highly dangerous to animal life. It was suspended from poles, over the middle of the street, in the usual way. Government crossed Lawrence street. The telephone company had, suspended from poles, along Lawrence crossing Government, as such wires are usually suspended, a wire which it used in its telephone business. This was stretched a few feet over and above the railway trolley wire, which it crossed. The complaint charges, in the first count, that this was a frail, weak wire, and was not securely fastened upon its poles, and was liable to break and fall upon and across the said trolley wire, and to extend down to the ground, heavily charged with electricity by reason of its contact with the trolley wire, and thereby become exceedingly dangerous to the lives of all persons and animals passing upon and along said streets, all of which were well known to both defendants; that it was the duty of the defendants, respectively, to so maintain, guard and protect their said respective wires, as to not allow the telephone wire, if it should break and fall to the ground, to come in contact with the trolley wire, and become charged with electricity from the latter; yet, it is averred, that, at the time of the injury complained of, the defendants failed and neglected so to do, whereby the telephone wire, which broke, fell across the trolley wire and extended to the ground heavily charged with electricity communicated from the trolley wire, and with which plaintiff's two horses, while being driven along Government street by plaintiffs' ser-

vant, came in contact, producing electric shocks, which killed one of them and seriously injured the other, and did injury to the harness. The second count charges the negligence of the defendants to have been, that they "wrongfully and negligently suffered said telephone wire to fall upon and across said trolley wire, and extend therefrom down to the ground, heavily charged with electricity from said trolley wire, and to be and remain in that condition." The third count charges that the negligence consisted in suffering the telephone wire to be and remain lying upon and across the trolley wire and extending down therefrom to, upon and across Government street * * * heavily charged with electricity from the said trolley wire. There were demurrers to these several counts, which were overruled.

The defendants filed separate pleas. The Telephone Company pleaded, first, the general issue. Its second plea, as subsequently amended, set up contributory negligence on the part of plaintiffs' driver, upon which issue was joined. Its third plea averred that its wire was in good order and condition; was properly located and maintained, and was necessarily stretched across, over and above the trolley wire; that it was charged only with such a low current of electricity as to be harmless to life or property brought into contact with it. The nature, and dangerous electric charge, of the trolley wire, as alleged in the complaint, are repeated, and the plea avers that it was the duty of the railroad company, which it could have performed, to so construct and maintain, guard and protect its said trolley wire as not to allow contact to be made with it and the telephone wire, if, by accident, the latter should fall where it crossed the former; yet, the plea avers, that the railroad company failed and neglected so to do, whereby, when the telephone wire did fall, it fell across the trolley wire, and communicated the electric current of the latter to plaintiffs' horses, doing the injury complained of by the plaintiffs. The fourth plea sets up the failure of the railroad company to obey an alleged lawfully authorized order or direction of the Mayor of Mobile requiring it, and all other companies using trolley wires, to guard and protect them by what is known as "guard wires." It avers that that company, by compliance with said order, in the construction of such guard wires, could have

so protected its trolley wires, that, in case the small telephone wire should fall, it would not come in contact with the trolley wire ; and this failure is charged to have been the direct cause of plaintiffs' injury. The fifth plea is substantially the same as the third, with the additional averment that the telephone company was established and in operation along Lawrence street, crossing Government, before and at the time the railroad company constructed its road and erected its trolley wire. The sixth plea is substantially the same as the fifth, with an additional averment of municipal authority for the construction and operation of its telephone lines.

As we have seen, the complaint contains several charges of negligence against both defendants : (1.) That the telephone wire was frail and weak, and not securely fastened to the poles, and was liable to break and fall across the trolley wire, &c., which facts were known to both defendants ; and that it was the duty of defendants, respectively, to so maintain, guard and protect their respective wires as not to allow the telephone wire, if it should break and fall to the ground, to come in contact with the trolley wire, &c., showing failure to observe these duties, with the resultant injury. (2.) That defendant· wrongfully and negligently suffered the telephone wire to fall upon and across the trolley wire, &c , and to be and remain in that condition. (3.) That they suffered the telephone wire to be and remain lying upon and across the trolley wire, &c.

It is plain that neither the third, fourth, fifth nor sixth pleas of the Telephone Company answers either of these charges. The third does state that the telephone wire was in good order and condition, and properly located and maintained, but this cannot be accepted as a denial of the allegations that, known to the defendants, it was frail and weak, not securely fastened to the poles, and liable to break and fall across the trolley wire ; and that it was the duty of the defendants to so maintain, guard and protect their wires as to prevent such an occurrence. Nor is it excuse to the telephone company, derelict in these respects, that the railroad company was guilty of the negligence charged in its several pleas. These allegations but emphasize the averments of the complaint, and accentuate the charges of the telephone company's own neglect. The fourth plea is, perhaps more vicious

than the third. · It shows the violation, by the railroad company of a lawful order of the mayor to erect guard wires to prevent just such catastrophes as now brought to view ; and yet it confesses that the party pleading maintained a weak, frail wire, insecurely fastened, and, as known to both defendants, liable to fall across the trolley, and violated a duty to protect it against such consequences. And more than this, it confesses that the party pleading, as well as its co-defendant, after the wire fell across the trolley wire, extending to the ground charged with the dangerous current of electricity, suffered it to be and remain in that condition, causing the plaintiff's injury. The same may be said of the fifth and sixth pleas. The demurrers sufficiently raise these objections, and the court erred in overruling them.

It is apparent there is no answer, in either of the special pleas of the defendant, The Mobile Street Railroad Company, to either of the charges of negligence contained in the complaint. It is not material to this controversy that the company had lawful authority to construct and operate its road, with the motive power employed. It does not appear, unless by the statement of a conclusion of the pleader merely, that the charter and municipal ordinance authorized the defendant, knowing that a frail, weak, insecurely fastened telephone wire, liable to fall across its trolley wire, and extend to the ground, carrying a deadly current of electricity to persons and property lawfully passing along the highway, was being maintained by another, to maintain and operate its own wire without taking any steps to prevent destructive consequences ; and particularly does no authority appear to suffer the wire of the telephone company to be and remain lying across its own, extending to the ground. Nor is it material that the defendant had no connection with the telephone company, and that the latter's wire broke and fell without the defendant's fault, and that it did nothing to cause it to break and fall as it did. Nor does the fact that defendant erected and maintained its wire in the manner that other trolley wires are erected and maintained by many prudent and well managed o ectric railway companies, conducting the same character of business over and along the streets of other cities, justify it in knowingly suffering a wire to be suspended over its own, in a condition likely to fall across

[McKay & Roche v. Southern Bell Telephone Co.]

its own, with attendant dangers mentioned without providing proper safeguards; or, after its fall, suffering it to be and remain in that condition. The demurrers to these pleas ought to have been sustained.

It is said that the pleas are good in that they show there was no joint liability of the defendants. The injurious act complained of consisted, in one aspect of of the complaint, in the concurrent maintenance of two wires, so related to each other, and so erected, that the one was likely to fall across the other, producing the dangers charged. This wrong was within the concurrent, common knowledge, contemplation and intent of both defendants. Both knew that the one wire was likely to fall across the other, and cause such damage as the plaintiff sustained, it was the common duty of both to abate the dangerous condition. It is not material by what special act or omission on the part of either, in the maintenance of its own wire, the dangerous condition was produced. So far as concerned the public, it was the maintenance of the two wires, so related to each other, in respect of injurious consequences, that they were inseparable. Known to both defendants, the two wires mutually depended upon each other for those consequences. Whether the condition was primarily brought about by the neglect of the one or the other, or both defendants, it yet existed with knowledge on the part of both, and both contributed to the continuance of its existence. The Supreme Court of Tennessee, in *Electric R. Co. v. Shelton*, 89 Tenn. 423, had occasion to consider a case substantially identical with this. The opinion being short, we reproduce it, as delivered by TURNEY, C. J., as follows: "Shelton's horse was killed by coming in contact with a wire of the telegraph and telephone company, which had fallen across the trolley wire of the electric railway company. The wire of the telephone company had become much impaired. The falling of a wall of a burning building broke a pole of the telephone company, breaking the wires at several points. At the point of the accident the telephone wires crossed the railway track above the trolley wire, and, while resting on it, the horse came in contact with it, and was instantly killed. There was no guard wire over the trolley wire. The case was tried by the circuit judge without the intervention of a jury. The condition of the

telephone wire was such as to arrest the attention of a prudent man engaged in the business of either company. The circuit judge found under the facts that both companies were guilty of negligence and responsible for the loss, and gave judgment accordingly. The judgment is correct. While it was the primary duty of the telephone company to see that its wires were in a reasonably safe and sound condition, and protected against the contingency of falling, it was also the duty of the electric company to see that its trolley wire was in like manner protected from such contingency. While it was the duty of the one company not to use unsound and unprotected wires, it was equally the duty of the other not to operate its road under such defective machinery. It might as well insist that it was not responsible for damages resulting from the fall of a rock which it had constantly recognized as threatening to fall, or of a dead tree which it had frequently noticed with decayed and giving roots, and knew would fall in the first wind or rain. The obligation to see that its road was in good repair, and its machinery in safe operating order, is not confined to the immediate and abstract presence of either, but extends to all surroundings that may depreciate the security of either. Both companies knew of the unprotected trolley wire, and the consequences of a contact of the wires of the one with those of the other. Both were bound to guard against such likelihood, and having failed to do so, are liable.''

It is unnecessary to discuss the joint liability of the two defendants, under the phase of the complaint which charges that they suffered the wire of the one, after falling, to be and remain across and in contact with that of the other, causing the injury. It is too clear for discussion that such liability is joint. The pleas were interposed to the whole complaint.

The special replications bring forward nothing new, and were improperly interposed. They might well have been stricken from the file. They will, probably, not be insisted upon.

There does not appear to have been any real question upon the trial as to the operation of the railway and telephone lines by the defendants, respectively; and the plaintiffs omitted to make direct proof thereof, at least as to the telephone company. There is clearly sufficient

evidence, howsoever weak, to send the question to the jury as to the operation of the railroad by the Mobile Street Railroad Company at the time of and for months prior to the injury, and to authorize an inference by the jury of a failure of duty, as alleged, on the part of the company, proximately causing the injury. As to the telephone company, there was evidence tending to show that a telephone wire was being and had been, for months before the injury, maintained as alleged in the complaint, and that it fell across the trolley wire as alleged. The defendant, The Southern Bell Telephone & Telegraph Company being sued and charged with maintaining the wire, came into court, by counsel, and entered upon a trial of the general issue, as well as of special issues. So, also, as to the other defendant, The Mobile Street Railroad Company. The conduct of the trial by these defendants from beginning to end; the character and manner of the development and production of the testimony, the cross examination of the plaintiffs' witnesses, the absence of a suggestion, express or implied, in the conduct of the trial on the facts, that any other than the defendants maintained and operated the wires, respectively—all tended to show an implied admission that they were the parties, and authorized the jury so to infer. It is certainly true that the plea of the general issue puts in issue all the material allegations of the complaint, and imposes upon the plaintiff the necessity of proving them; but the rule is a reasonable one. No set form of proof is prescribed. The defendant may, by his course of conduct on the trial, show to the satisfaction of the jury, that he does not really controvert a particular fact strictly within the issue, but waives formal proof thereof; and, in such a case, it should be left to the jury to say whether it is waived or not. Suppose an extra judicial investigation, of precisely the same nature and incidents as the trial in question, had occurred by and between the parties to this suit, in reference to this subject; would not the conduct of the defendants thereon be admissible, upon a subsequent judicial investigation of the matter, to authorize the inference of an implied admission that they were the parties, who maintained the wires? We think so. We will not, therefore, declare that the rulings upon the pleadings were erroneous without injury.

The city ordinance which was excluded may be so connected on another trial as to render it admissible, if it was not on the trial appealed from.

Reversed and remanded.