## INJURY FROM CONTACT OF TELEPHONE WITH TROLLEY WIRES.

[Circuit Court of Lorain County.]

THE NORTH AMHERST HOME TELEPHONE COMPANY AND THE C., E. & W. RAILWAY COMPANY v. CLINTON JACKSON, AN INFANT.

Decided, October 8, 1903.

*Negligence—Where Telephone Wire Fell Across Trolley Wire into the Street—Pedestrian Shocked by Contact—May Properly Join the Two Companies—Expert Testimony as to Insulator—Hearsay Evidence Competent for What Purpose—Evidence as to Leaks in Insulators at Other Points Incompetent.*

1. Where telephone wires were strung across and but a few inches above a pull-over trolley wire, and there were no guard wires or insulators at that point, and one of the telephone wires fell across

the trolley wire and thence into the street, and becoming charged caused a severe shock to a pedestrian, the negligence of each company co-operated with that of the other to bring about the injury, and a demurrer will not lie for misjoinder to a petition making them both defendants.

2. The issue having arisen whether the insulator in use on the pullover wire between the point of contact and the trolley wires was a safe insulator, the testimony of an expert witness was properly heard on that point; and, if for no other reason, the objection thereto by the defendant street railway company on the ground that it was not bound to adopt the best insulator known, and that to compare the insulator in use with some other insulator was in effect making it appear that they should have adopted another, was without avail for the reason that the defendant had previously inquired of a witness whether the insulator in use was safe.

3. Questions to witnesses as to what changes had been made in the wires since the accident were not incompetent as tending to cause the jury to believe the company had by making such changes itself recognized that it had been negligent, where it was plain that the purpose of the questions was to fix the condition of things at the time of the accident, and not to show that changes had been made for the purpose of greater safety.

4. The admission of hearsay evidence is not erroneous where the purpose of such evidence is limited to fixing a date in the mind of the witness.

5. But evidence that other span wires on the same trolley system, and provided with the same kind of insulators, had been found heavily charged with electricity at or about the time of this accident, opened up a new field in that it called upon the other party to show whether electricity really did escape at other points and at other times, and was therefore erroneous.

MARVIN, J.; HALE, J., and WINCH, J., concur.

The case of The North Amherst Home Telephone Company and The Cleveland, Elyria & Western Railway Company against Clinton Jackson, an infant, is a proceeding in error brought here, seeking to reverse the judgment of the court of common pleas.

Each of the plaintiffs is a corporation. The North Amherst Home Telephone Company operates an exchange in the village of North Amherst, this county, and the railway company operates an electric railroad from North Amherst to Elyria, and so on through to Cleveland.

At Amherst the construction of the railway at its terminus is such that there is a Y, upon which cars are run for the purpose of getting them turned around and headed back over the line. For the purpose of this Y, the trolley over the north branch or track of this Y is drawn to and held in its position by a wire, called a pull-over (that is not the name by which it is called in the petition, but spoken of so many times in the evidence, that we have designated it as a pull-over wire) extending from the trolley to a green maple tree some considerable distance and northerly from the trolley. It is perhaps eighty-five feet from the trolley over to the tree. This pull-over wire is wrapped around the tree with dry boards between the wire and the tree in such wise that the wire does not come in contact with the tree itself. Between the trolley and the tree, and but a few feet from the trolley, there was placed what is known as a globe insulator for the purpose of cutting off the current, which would in the operation of the cars of the trolley company be carried along the trolley and out upon this pull-over.

About thirty inches above this pull-over wire and between the insulator and the tree, and crossing the line of the pull-over, the telephone company had strung four of its wires; there were no guards or insulators upon the wires of either company at the place of the crossing, and nothing to prevent the telephone wires from sagging down upon the pull-over wire except the tension of the wires. This crossing point was over one of the public streets of the village.

On the evening of July 4, 1901, there was a severe electric storm at Amherst, accompanied by heavy rain and violent wind. During the storm a barn in the village was set on fire, probably by lightning, and the plaintiff, a boy about eight years of age, with many others, went to the fire, and on returning therefrom, in walking along the public street or sidewalk, he walked against one of the telephone wires, which in some manner had been broken or burned off and was hanging over the pull-over wire of the railway company. This wire was charged with electricity to such an extent that the plaintiff was severely

shocked and burned by the electricity upon coming in contact with the wire.

To recover damages for this injury suit was brought by the defendant in error against both the telephone and the railway company, charging that his injury resulted from the carelessness and negligence of these companies. The case was tried to a jury in the court of common pleas, resulting in a verdict and judgment for the boy, the defendant in error, against both of these companies. The bill of exceptions before us contains the proceedings which took place in the trial, including all the evidence. Plaintiffs in error claim a reversal of the judgment for numerous reasons to be noticed.

First. A demurrer was filed by the railway company to the petition for misjoinder of defendants. This was properly overruled, for though each company had control of its own wires, yet the allegations of the petition are such as to show that the negligence of each company co-operated with that of the other to bring about the injury. Not only that, but there could be no prejudice to the railway company in the overruling of that demurrer, for the allegations of the petition showed a good case against that company. But in a case where the allegations are as they are here there was no misjoinder.

The Supreme Court of Alabama, in the case of *McKay & Roche* v. *Southern Bell Telephone & Telegraph Company et al*, reported in the 31st of the Lawyers' Reports Annotated, page 589, uses this language in the third clause of the syllabus:

"A telephone company and an electric railway company are jointly liable for negligence when both maintain their wires with knowledge of the danger caused by the want of guard wires between the trolley wire and a telephone wire insecurely suspended over it, and especially when they permit a broken telephone wire to remain suspended across the trolley wire."

It is urged further on in the trial, by an objection to the introduction of any evidence, that the petition fails to state a cause of action against anybody; that the charge in the petition, and the only charge of negligence, is that the companies had no guards or insulators at the place where the wires of the tele-

phone company passed over the line of the trolley of the rail way company.

The language of the petition in that regard is this:

"On the 4th day of July, 1901, and for many months prior thereto, the defendants in their said business, knowingly, purposely and negligently suffered and permitted four or more of the wires of said telephone company to cross nearly at right angles to and within a few inches above a certain wire of said railway company at the northwest corner of Main and Milan streets in said village, the same being much traveled thoroughfares in the business center of said village, while all of said wires of both of said companies were heavily charged with electricity, and without any of said wires of either of said companies being properly insulated at said point of crossing as in the exercise of ordinary care by said defendants they should have been."

Now with the liberal construction given to pleadings under the code, it seems clear to us that there is a charge of negligence here, more than simply negligence that there were no guards and no insulators at the point of crossing. "Without any of said wires of either of said companies being properly insulated by guards from coming in contract with one another at said point of crossing, as in the exercise of ordinary care by said defendants they should have been." It seems to us that the fair reading of this is that: There was not the proper insulation of the wires of either company, and at the point of crossing there were not proper guards.

Counsel for the plaintiff clearly understood that such was the meaning, and we think it clear it meant that, and that therefore there is a charge of negligence in the want of proper insulation and the additional charge of negligence in the failure to guard the wires at the point of crossing.

Testimony was admitted (this is complained of, over the objection of the railway company), as to whether the insulation of the pull-over wire was a proper one. As has already been stated there was what is called the globe insulator in this pull-over wire a short distance from the trolley wire. The wires of the telephone company crossed the line of the pull-over wire at nearly right angles between this insulator and the tree. The first place where the objection is made to this kind of

evidence as to the insufficiency of this insulator in the pull-over wire, is on page 68 of the record. Bert Smith was a witness, and he was asked about the ball or globe insulator which was in the pull-over wire and quite a distance from where the wires crossed. Now it was said no complaint is made in the petition that there was any improper or insufficient insulation anywhere except at the place of crossing. But what has already been said on that point is all that need be said. It is proper to show under this petition that the insulator was not such as should have been used, the insulator at this place in the pull-over wire.

Again, it having been made to appear that the insulator used by the railway company was what is known as the ball insulator, and that other insulators for the same purpose were used by electric railway companies, quite a number of witnesses were asked as to the comparitive merits of this ball insulator with other known insulators. Complaint is made that this kind of evidence should not have been permitted, because it is said the railway company were not bound to use the best insulators known, and that to compare their insulator with some other insulator was in effect to make it—it could not be admitted except for the purpose of making it—appear that the company should have used another, because there was another that was better, and they say they were not bound to have the best, but were only bound to have an approved insulator.

That objection would have more force, and possibly would be good, but for what had before that been elicited by questions put by counsel for the plaintiffs in error, the defendants below. W. J. Hiller was on the stand, placed there by the plaintiff below. He was the superintendent of the railway company. He had testified somewhat as to the construction of this railway. Upon examination he was asked by counsel for the railway company: "What do you say as to the globe insulator being a proper and safe insulator, July 4th, 1901?" That was objected to by the plaintiff below, the objection was overruled and the witness answered: "I think it is as good as they could have got in the market." Not content with that, counsel for

the plaintiff in error asked this question: "Were there any that were better?" And the witness answered: "Not to my knowledge." Now that having been brought out by questions asked by counsel for the railway company, it seems to us justified the defendant in error, the plaintiff below, to show that their superintendent was mistaken when he said that there were no better insulators on the market. Otherwise with what good effect the attorney might go to the jury and say: Why their witness, put on by themselves, says there were no better insulators in the market, overlooking the fact that he said it in answer to their question, and then might add very well in the argument, "and nobody pretends to deny it;" that was the very best insulator that could be got, and nobody is brought on to deny it. There was no such error in permitting the questions of the character under discussion to be answered as would justify a reversal of this case.

Bert Smith was a witness. He was asked by counsel for the defendant in error his opinion, and this appears on pages 79 and 80: "Whether the ball was a safe insulator." He was permitted to answer, he did not think it was safe; he said: "It was not safe as against lightning."

On page 85 he also made the statement "that the ball insulator would leak." It is complained that the ruling of the court in permitting this, which was permitted over the objection of the railway company, was allowing the witness to give an opinion on an ultimate matter. The witness was permitted to say that the insulator was not a safe insulator, give his opinion it was not a safe insulator, and that the insulator leaked.

Now already attention has been called to the evidence given by Hiller on page 8, when counsel for the railway company asked him: "What do you say as to the globe strain insulator being a proper and safe insulator, July 4th, 1901?" I think that they might very well after the testimony of Hiller, show by Bert Smith or any other competent man that it was not a safe insulator and that it would leak. Not only that, but our Supreme Court in the 61st of the O. S. Reports, at page

608, *Ohio and Indiana Torpedo Company* v. *Fishburn et al*, discuss the question of the opinions of witnesses upon matters something like this. There an expert in the matter of drilling oil wells was upon the stand and he was asked the question: "Suppose the shooter of a well brings one hundred quarts of nitro-glycerine to said well, the nitro-glycerine had been placed in the shells, lowered in the well, the well logged in, the derrick boarded up, except the opening facing towards the engine and belt house, the said well being at a distance of from eighty to two hundred feet from the residence and buildings adjoining and surrounding it, located in a village of twelve to thirteen hundred people; the condition of the atmosphere such that when the gas is liberated from the well, it settles to the surface of the earth; would the hour of 7:30 on the seventh day of September in any year, when darkness had intervened so that fires and lights are lit in certain of such business and dwelling houses be in your opinion a proper time to shoot such well; that is to say, explode such torpedo therein?" And the answer is: "It is not a proper hour."

The court say:

"The objection urged is that this was error because the fact sought was a matter to be found by the jury. We do not think the admission of the evidence was error. The fact called for was evidentiary. It tended to prove one fact involved in the issue but was not the ultimate fact in issue. Nor was it a subject of common knowledge, or one of which the jury could as well judge as the witness."

The opinion then goes on to discuss the right of an expert to testify to it.

Now here the thing charged was that these people were negligent in the use of this insulator. This was one of the negligent acts complained of; we think it was proper to inquire of an expert whether that was a safe insulator, and in any event that it was not error after the other party had inquired of a witness whether it was a safe insulator.

On page 89 of the record we have the testimony of a witness by the name of Kitchon on the stand as an expert, and he was

asked: "Now from your practical experience of your life time, are you able (after he had given evidence tending to show he was familiar with electric street railroads), are you able, have you the means of knowing, from the practical workings of insulators, are you able to state which is the better insulator for a pull-over wire in July of 1901?" A. "I am." "You may answer the question." Then there was an objection and it was overruled. A. "For me I would put in the porcelain insulator or the wood." It seems there is an insulator known as the porcelain insulator and there is another insulator made of wood, and they are comparing those. "For me I would put in the porcelain insulator or the wood. Now if you want to know my reasons I will explain my reasons." No motion was made to take that testimony from the jury. The question was proper if what has already been said about comparing the different kinds of insulators one with another, if what has been said about that is correct, then the question was proper. If the answer was incompetent, no proper means to have it taken from the jury was exercised, and hence the court committed no error in that regard.

Frank Estinghausen was a witness in the case on the part of the plaintiff below, and as appears on page 103, he was asked to compare the globe insulator with the wood and other insulators, and that was objected to and overruled. And he was asked: "Do you know anything about that?" The question was proper, if what we have already said is all right. He said: "I have seen these, yes, sir, and seen them used a great deal; in speaking from a standpoint of working for my own safety on one of these or on the strap insulator or wood insulator, I would prefer the wood or strap insulator to this for several reasons."

The record reads: "Objected to by defendant; objection overruled; exception by defendant." The witness continues right on with his answer. "I say, with my own experience, I would prefer the strap insulator or wood insulator, for the reason here with a high current and working on the line; I am speaking strictly from my own experience in working on the line." He

goes on and bases it upon his own experience and what he would prefer, but no motion was made to take that from the jury. If the question was proper, as we have held it was, then the proper method of taking that from the jury was not adopted, and hence no error which would justify a reversal in that regard.

There was asked of more than one witness, one was Steele and I think of another witness, questions as to the condition of the wires at this place where the boy was injured, at the time of the trial. It is urged that error was committed, because the question of what changes had been made should not be permitted to go to the jury, as that might tend to induce the jury to think that the company itself recognized that it was negligent in the way that it had its wires, its arrangement at this place, and had made changes. At each of the places where this complaint is made an examination of the record shows that that is not the purpose at all, that that was not the tendency of it. The questions were asked as to the condition of things, and he said there are ten wires over there now. What the counsel was clearly trying to get at was, how many there were at the other time, not for the purpose of showing they made a change, but when the witness answered there were ten, counsel recognized it was not the same as it was before, and asked: "How was it at the time of this transaction?" There was no tendency to show the company had made any change for the purpose of making it safer, and therefore no prejudice could come to the company by having this question answered. That is true with each of the questions where a reference is made to a change.

Complaint is made as to some inquiry about the time Clark's buggy was overturned, and the witness stated he had heard of Clark's buggy being overturned, and it is urged that the plaintiff was getting in hearsay evidence. That was not the purpose of the evidence at all. He was asked, "You heard about Clark's buggy being overturned?" A. "Yes." Nobody claimed that was overturned by any electric storm, but in order to get at the time, because they thought they would be able to show when the buggy was overturned, they simply put the

question, "Do you remember when Clark's buggy was over-turned?" There was no error in that.

Without stopping to go through with each of the objections made and exceptions taken to the rulings upon evidence, either permitting questions to be answered or excluding answers to questions, we will consider only one other witness, one other matter as to the rulings on evidence.

Ora Mowary was introduced by plaintiff below as a witness, and Mowary testified—he had been on the stand before—but he was introduced for a second time, as appears on page 278 and following, and he testified that he had been familiar with the lines of the telephone company, and that he was familiar with the lines of this railway company.

Then he was asked: "Have you come in contact with the trolley system of The C. E. & W. Railway Company?" That was objected to and the objection overruled, and no exception was there taken. A. "Yes, sir." Q. "I will ask you whether or not, in the line of your duties, it has become necessary for you to climb the poles to which their trolleys were attached?" A. "Yes, sir." Q. "I will ask you whether or not the span wires running from the trolleys to the poles on the C. E. & W. are supplied with insulators like the one marked Exhibit 1? What, if anything, have you discovered, Mr. Mowary, regarding live wires between these insulators and poles?" That was objected to and objection overruled and exception taken by defendant. Now following that, several questions are asked of Mr. Mowary of this sort, tending to show and designed to show that Mr. Mowary had observed the workings of the trolley system of this railway company, and that he had noticed that electricity escaped past these insulators, and the lightning.

The objection having been made, the court said this: "I would like to know what you expect to prove?" He asked this of plaintiff's counsel.

By Mr. Metcalf. "We expect and offer to show by the witness and other evidence, that a large number of the span-wires of the defendant railway company attached to its trolley wires along its line were, at about the time of the accident to the plaintiff, found alive and heavily charged with electricity be-

tween the poles to which the span-wires were attached and the globe insulators thereon near the trolley, and while these globe insulators to all appearances were in perfect condition.''

By the court: ''I will allow the testimony to go in under this statement, but before this trial ends, if I find I am wrong, I will endeavor to take it from the jury.''

The court nowhere took that from the jury; he did permit that kind of evidence, not connected with this transaction, not near to this transaction. Necessarily that opened up, as we think, a field that would have called upon the other party to bring evidence to show—upon finding out from this man where it was—evidence to show whether electricity did escape at other points and other times. We think it was clearly error to admit this testimony, and that it was prejudicial to the defendant, and for this error the judgment must be reversed.

Very many other errors are complained of. The charge of the court is complained of on page 576. Certain language used by the court is said to be ambiguous, and other things in the charge, as already stated, are complained of; at least on page 576 the language is somewhat ambiguous, but we think what was afterwards said by the court in relation to the subject matter contained in that fully explained that, and that is equally true as to page 586, and we think that the charge as a whole was a fair charge, and no error was committed by the court in refusing to give requests made, and no error given in the charge as made, and the only error on which the judgment is reversed is on the admission of this testimony of Mowary, and for that the judgment is reversed and the case remanded to the court of common pleas.

*E. G. Johnson, Hale C. Johnson* and *H. G. Redington,* for plaintiffs in error.

*Metcalf & Cinniger,* for defendant in error.