(122 So. 677)

## ALABAMA POWER CO. v. McINTOSH.
### (3 Div. 878.)

Supreme Court of Alabama.   April 25, 1929.

Rehearing Denied June 13, 1929.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellee.

Steiner, Crum & Weil and Rushton, Crenshaw & Rushton, all of Montgomery, for appellant.

BOULDIN, J. Irene McIntosh sues the Alabama Power Company for wrongful act, omission, or negligence, causing the death of her minor son, William Lonnie Steavy. The action is under the section of the Homicide Act relating to the death of a minor child. Code, § 5695.

If the father is dead, the right of action is in the mother. Code, § 5694.

Alabama Power Company contracted with J. A. Thomas to clean, wax, and polish a hardwood floor in the defendant's building including a room occupied by some of its office force in the city of Montgomery.

There were electric floor connections for the purpose of operating office fixtures.

The contractor proceeded to do the work of floor cleaning by the use of steel wool and gasoline. According to plaintiff's evidence, while one of his employés was cleaning around one of the floor plates, an electric arc or flash came from the receptacle, igniting the gasoline, spreading rapidly through the fume-laden room. William Steavy, a youth of 16 years of age, and also an employé of Thomas, working on the floor some feet from the origin of the fire, was, before he could be rescued, so burned that he died a few hours later.

■■ Without controversy, he was an invitee to whom the defendant owed the duty of reasonable care to keep the premises safe—the ordinary care which prudent persons exercise for the safety of others under like conditions. Under conditions involved in the use of a dangerous agency, such as electricity, reasonable care requires such precautions as are commonly taken by prudent men of requisite expert knowledge. The fixtures were installed by Montgomery Electric Company, regularly employed to do the wiring for defendant in Montgomery.

In count 4 of the complaint, on which the case was tried, the death of plaintiff's son is alleged to have occurred "as a proximate result and consequence of the negligence of the defendant, in that the defendant negligently allowed said plug, plate or electrical appliance which was improper and unsafe to be embedded in said floor, to be and remain in said improper and unsafe condition in said floor."

■ The type of floor fixture alleged to have been negligently maintained is shown by the undisputed evidence to be known as "Edison base type receptacle." The use of this type in floors is forbidden by the "National Electrical Code" for interior wiring. Evidence went to the effect that this Code is the standard, is used by all competent wiremen, is called by one witness the "interior wireman's Bible."

In connection with such evidence, the Code, being the expression of the matured judgment and experience of men in that business, becomes evidence of correct appliances for such places, and evidence that the use of fixtures forbidden by it is negligence.

■ The power company insists it was entitled to the affirmative charge upon several grounds:

First, it is argued the evidence failed to show that plaintiff's son was exposed to any greater danger at the time than if any other type of installation had been used. In this type a brass plate, covering the receptacle, is inserted flush with the floor. It has a circular opening to insert the plug, in this case a plug of the screw type. A circular flap, part of the plate or attached thereto by hinges, is made to cover this opening when the plug is removed. In the approved type the opening is covered by a dome-shaped top screwed on. Gaskets are used to further prevent the entry of dust or moisture into the receptacle. Some evidence tends to show it is safer as against accidents of this sort.

The point is made, however, that in this case the floor cleaner simply pulled out the cord and left the lower section of the plug in place so that the flap could not be closed; and that the same course taken with the other fixtures would have left a like exposure to danger. This view ignores a phase of the evidence going to show the flap was not on the plate, had been broken off or removed before, and that a removal of the plug would have increased the danger of gasoline and particles of steel coming into such contact with the live wire as to start a fire.

■ It is insisted in the next place that the alleged breach of duty was, as matter of law, not the proximate cause of the injury. "Proximate Cause" has been the theme of much definition and of frequent application by this court as well as others.

Not now repeating, we merely cite some of our cases: Western Railway v. Mutch, 97 Ala. 196, 11 So. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179; Whitman v. M. & O. R. Co., 217 Ala. 70, 114 So. 912; Armstrong v. Montgomery St. Ry. Co., 123 Ala. 233, 26 So. 349; Mobile & O. R. Co. v. Brewing Co., 146 Ala. 407, 41 So. 17; Dye-Washburn Hotel Co. v. Aldridge, 207 Ala. 475, 93 So. 512; Bell Tel., etc., Co. v. Miller, 192 Ala. 350, 68 So. 184; Miles v. Hines, 205 Ala. 86, 87 So. 837; Thompson v. L. & N. R. Co., 91 Ala. 496, 8 So. 406, 11 L. R. A. 146.

The negligence here, if any, consisted in creating or contributing to the creation of a zone of danger to the workmen in the room.

If installing this class of fixtures was not negligent or wanting in due care, it would not become so by the independent negligent act of another converting it into a zone of danger not to be foreseen and avoided.

■ There is evidence that the special reason for forbidding this fixture in floors is mechanical injury to the appliance by the entry of dust and water; but an ultimate end is also stated to be fire prevention. It may be said the electrician in all internal wiring is charged with the duty to look out for the prevention of fires in all ways which the electric spark may communicate.

■ Negligence in this regard endangering the building may also be regarded as endangering the persons rightfully employed therein.

■ There is again some evidence that working around any electric connection with gasoline and steel wool is dangerous. Other evidence, however, goes to the effect that this accident could not have happened if the approved fixture had been installed and maintained intact at the time.

If the use of gasoline and steel wool around this fixture was negligence on the part of the contractor, then the question arises, Was it the efficient intervening cause, or merely con-

curring negligence in the creation of a danger zone for workmen?

We think, if the jury found negligence in installing and maintaining this fixture, negligence in failing to take due precaution against fire, any negligence of the contractor of the same character, bringing about the immediate danger, may be considered a concurring cause, and not the supervening and sole proximate cause, of the injury, and this without regard to whether such concurring negligence could be anticipated.

In such case there is direct causal connection between the negligence of defendant and the injury. There is a present continuing negligence endangering persons in the building without which the accident would not have occurred. In all cases of concurring negligence, it may be said the one would not have produced the result without the other. If this be a defense, both would escape, although both be in the wrong. A present danger caused by present maintenance of wiring in a negligent manner concurring with present negligence of another, both creating the conditions causing the mishap, renders both liable. Southern Bell Telephone & Telegraph Co. v. Miller, 192 Ala. 350, 68 So. 184; Montgomery Light, etc. Co. v. Thombs, 204 Ala. 678, 87 So. 205; Atlantic Coast Line R. Co. v. Carroll, 208 Ala. 361, 94 So. 820; Home Telephone Co. v. Fields, 150 Ala. 306, 43 So. 711; Jones v. Finch, 128 Ala. 217, 29 So. 182; McKay v. Southern Bell Telegraph & Telephone Co., 111 Ala. 337, 19 So. 695, 31 L. R. A. 589, 56 Am. St. Rep. 59; Star Min. Co. v. Fulton, 205 U. S. 60, 27 S. Ct. 412, 51 L. Ed. 708; Schell v. German Flats, 54 Misc. Rep. 445, 104 N. Y. S. 116; Illinois Cent. R. Co. v. Siler, 229 Ill. 390, 82 N. E. 362, 15 L. R. A. (N. S.) 819, 11 Ann. Cas. 368; United Electric Co. v. Shelton, 89 Tenn. 423, 14 S. W. 863; Krenmayer v. St. Louis Trans. Co., 220 Mo. 639, 120 S. W. 78; Sweet v. Perkins, 196 N. Y. 482, 90 N. E. 50; Lane v. Atlantic Works, 107 Mass. 104; 1 Shearman & Redfield Negligence, § 122, and note; Curtis; Law of Electricity, §§ 436, 438; Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610.

However, in this case the evidence went further, and brought into it another element here to be noted.

Some evidence went to show that the contractor, in making his contract, advised defendant's contracting agent that the floor would be cleaned with gasoline and steel wool, and the contract contemplated such method and materials.

This contracting agent was not an electrician, and had no knowledge of any dangers incident to such work. We think this unimportant. A corporation, acting through many agents, and having a wide range of activity, must be charged with the knowledge of each of its agents acting within the line and scope of his employment. So, if the company's engineer was charged with the knowledge of the dangers incident to this fixture, and its contracting agent authorized the use of steel wool and gasoline, negligence attributable to both these facts is the negligence of the company.

Again, some evidence goes to the effect that cleaning hardwood floors by the use of gasoline and steel wool is frequent, a method often employed in Montgomery. Cleaning and polishing hardwood floors is expected as matter of common knowledge. So we conclude that whether an engineer of the company installing electric fixtures in a hardwood floor has, in the exercise of ordinary care, the duty to take precautions against dangers incident to floor cleaning by methods in common use, is one for the jury.

Contributory negligence of the deceased cannot be laid to the fact that his employer had no permit to use gasoline under city ordinances, unless such ordinance charges the employé with the duty to see to such permit, or extends its penalties to him, or the employé knowingly participates in the violation of the city ordinances.

That the employer carried on the premises five gallons of gasoline in violation of a city ordinance would not, as matter of law, render each of his employés guilty of contributory negligence. This excess amount of gasoline was not the cause of the injury, as it was in another room, and did not explode nor burn.

Assumption of risk does not accompany unknown dangers. The ordinary layman, youth or adult, is not charged with the same knowledge of concealed dangers in electric fixtures as those whose duty it is to have expert knowledge and use it in avoiding needless dangers.

If the use of several open vessels and excess of saturated materials contributed to an excess of gasoline fumes in the room and to a spread of the fire, it was for the jury rather than the court as matter of law to determine whether the youthful employé, working under personal supervision of the employer, was to be charged with contributory negligence in this regard. Even the alleged excess of gasoline fumes is laid, under one phase of the evidence, to the defendant, in that its agent required the windows of the room to remain closed.

The defendant was not due the affirmative charge.

Assuming the evidence made a case for the jury on contributory negligence, an instruction to find for plaintiff on proof of the averments of the complaint would completely ignore such issue, and be positively erroneous.

A written charge misstating the law of the case on controlling issues therein is not cured by oral instructions correctly stating the law. No one can tell which of two contradictory instructions the jury has followed.

Charge 1 given for plaintiff, however,

taken as a whole, negatives negligence as a defense on the part of any "other than plaintiff's minor child." This implies his negligence would be a defense.

Taken in connection with the court's oral charge submitting the issue of contributory negligence, the given charge was, at worst, only misleading, calling for an explanatory charge, if requested.

■ Defendant's refused charge No. 2 was misleading in referring this action to the statute permitting a personal representative to sue.

■ Refused charge 6, as an instruction to a jury, is misleading. It tends to confuse "proximate cause" (negligence being assumed) with what constitutes negligence in the first instance.

■ One element of proximate cause is causal connection betwen the negligent act and the injury. This can only be determined in the light of all the evidence, including the facts attending the accident.

Given charges 3, 4, 7, and 16, quite favorable to defendant, covered the principle of refused charge 6, so far as correct and applicable.

What has been said suffices to indicate there was no error in refusing charge 8, if not otherwise faulty.

■ Refused charge No. 9 was clearly bad as applied to this case. There was no evidence that the defect complained of, a dangerous fixture installed and maintained by defendant, arose after Thomas took charge, or that Thomas ever took charge in the sense of being responsible for defects in wiring.

Cases like Scoggins v. Cement Co., 179 Ala. 213, 60 So. 175, are not in point.

That defendant may be responsible for injury due to concurring negligence of its agent and Thomas has already been stated.

■ With reference to refused charges 10, 11, 12, 14, 18, 19, 22, 23, 27, and 28, it is sufficient to say each was refused without error for reasons already indicated, or were covered in principle by given charges.

Affirmed.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur.

SAYRE and BROWN, JJ., dissent.

FOSTER, J., not sitting.