199 So.2d 87

SOUTHERN MINERALS COMPANY, Inc.

v.

Eugene T. BARRETT.

6 Div. 19.

Supreme Court of Alabama.

May 11, 1967.

Spain, Gillon & Young, John P. Ansley and Ollie L. Blan, Jr., Birmingham, for appellant.

Higgins, Windham, Perdue & Johnson, Birmingham, for appellee.

78

PER CURIAM.

Appeal by defendant from a judgment rendered, on a jury verdict in favor of plaintiff in a suit to recover damages for personal injuries. Defendant's motion for a new trial was overruled.

The case went to the jury on two counts. Count 1 avers, in substance, that plaintiff, when injured, was employed by one Mc-Ginnis, a subcontractor of the defendant; that McGinnis had agreed with defendant to furnish the labor necessary to construct certain manholes for a sewer line being laid by defendant in Tarrant City, Alabama, at or near the intersection of Ford Avenue with National Street; that, in connection with said work, defendant "had excavated, ·or ·caused tó be excavated, all ·or· substan-

tially all of the area embraced within said intersection to a depth of, to-wit, 12 feet; that plaintiff was employed by McGinnis as a brick mason's helper in constructing the manholes for said sewer line at said place; that plaintiff, while performing his duties as such brick mason's helper for McGinnis in constructing a manhole for said sewer line in said excavation in said intersection, "one of the walls or sides of said excavation gave way or caved in, and as a proximate consequence thereof plaintiff was injured and damaged as follows:" (Catalogue of injuries and damages); and that "all of his said injuries and damages were caused as a proximate result of the negligence of the defendant in negligently failing to provide supports or other devices to maintain the walls or sides of said excavation in place and to prevent the same from giving way or caving in at said time and place."

Count 2 is substantially the same as count 1 down to the last clause as stated above. In place of that clause, count 2 avers that "it was one of the duties of the defendant to furnish to the said Burney C. McGinnis and his employees, including plaintiff, a reasonably safe place in which to perform the duties that plaintiff was performing as such brick mason's helper; * * * that when said excavation gave way or caved in plaintiff was caught between the sides of said excavation, and as a proximate conse-quence thereof plaintiff was injured and damaged as complained of and set out in said Count 1"; and that "all of his said injuries and damages were caused as a proximate result of the negligence of the defendant in negligently failing to provide a reasonably safe place for the said Burney C. McGinnis and his employees, including plaintiff, to perform the work of construct-ing said manhole at the time and place aforesaid."

Defendant's demurrer to the complaint, and each count separately, was overruled. There was a plea in short by consent.

The defendant requested the affirmative charge with hypothesis as to each count

separately. These were refused and both counts were submitted to the jury. There was a general verdict in favor of plaintiff.

The substance of the evidence on the issues presented, considered in the light most favorable to plaintiff-appellee (see: South Highlands Infirmary v. Camp, 279 Ala. 1, 4, 180 So.2d 904), may be stated as follows: The defendant, Southern Minerals Company, was the primary contractor engaged in constructing a sewer in Tarrant City, Alabama. In connection with this work, defendant entered into an oral agreement with McGinnis to build manholes at specified points along the sewer line. Plaintiff was an employee of McGinnis. On the evening before plaintiff was injured, McGinnis received a telephone call from defendant's representative and was told that defendant was ready for one of the manholes to be built the following day. McGinnis, with plaintiff, went out to the job the following morning.

The ditch where the manhole was to be built was excavated by defendant and was about 30 feet wide at the top and 12 to 14 feet deep, with the sides sloping down to the bottom. McGinnis' only responsibility was to build manholes at places in the ditch designated by defendant.

McGinnis and plaintiff, before getting in the ditch, walked around the sides and stamped on the edge of the pavement to see if there were any loose materials that might cause the banks of the ditch to collapse or cave in. Plaintiff testfied that the ditch appeared safe to him. Approximately ten minutes after plaintiff got in the ditch, the North side caved in causing dirt, rock and concrete from near the top of the ditch to slide down into the ditch, pinning plaintiff's legs against pipe in the ditch and injuring him.

Just before plaintiff got in the ditch, and while he was in it, defendant's backhoe (ditchdigger) machine, weighing about 50 tons, was being operated within 50 to 75 feet of the manhole construction site. The operation of the machine caused the ground to vibrate. Both plaintiff and McGinnis' testified that defendant's dump trucks, "ton and a half trucks holding maybe six cubic yards of dirt," were hauling dirt away from the backhoe and running within 3 to 4 feet of the side of the ditch.

Both men also testifed that dynamite was being set off in the area that morning. McGinnis testified that blasting was done shortly before the cave in, that the blasting "vibrated the ground" and "picked the (backhoe) machine up about two feet" and dropped it. On the other hand, defendant introduced evidence that no dynamite was exploded that morning, that no trucks were driven near the side of the ditch where plaintiff was working, that the backhoe machine was operating farther up the ditch, and that the ditch was sloped to a sufficient degree to render it safe for men to work there.

There is no evidence of the providing of "supports or other devices to maintain the walls or sides of said excavation in place and to prevent the same from giving way or caving in."

Defendant's president testified, on cross-examination, that he would not consider it safe to drive a truck within 2 feet of the side of a ditch such as this, nor to set off dynamite charges of such magnitude as to lift the backhoe machine off the ground.

Another of defendant's witnesses, a contractor also engaged in pipe line work, testified on cross-examination that, in his opinion, if dynamiting raised the backhoe machine a foot or a foot and a half off the ground, it was possible the dynamiting would affect the ditch.

Prior to trial, interrogatories were propounded to the defendant and answered by its president. These were introduced in evidence. In answer to a question as to what was done "to prevent the walls or sides of said excavation from giving way or caving in at said place," he stated: "As a safety measure, the ditch was excavated so as to have a 1½ to 1 slope or better."

Another question and answer were as follows:

"Q. Following said rains state what, if any, means were employed by you to prevent the walls or sides of said excavation from caving or falling in. Describe each act and thing done by you to that end and state when you did each of the same.

"A. The walls were sloped to 1½ to 1 slope or better as described in answer No. 24."

When this witness was questioned at the trial concerning his answers to the above questions, the following occurred:

"Q. Then what you swore in answers about being a 1 to 1½—1½ to 1 slope is incorrect, isn't it?

"A. According to those figures; yes, sir.

"Q. I am talking about according to the right figures, if those figures are not right, I want you to tell the Jury they are not right.

"A. No, sir, I would say that is not the 1 to 1½ slope.

"Q. You would say it was not a 1 to 1½ slope?

"A. Yes, sir.

"Q. And ya'll were supposed to put a 1½ to 1 slope to be on the safe side, weren't you, that is what you were trying to do?

"A. We weren't supposed to; no, sir.

"Q. I say it is what you said you were doing for safety measures?

"A. Sure."

Another witness for defendant, the sewer inspector for Jefferson County at the time of the accident, testified on cross-examination that the driving of heavy trucks or dynamiting in the vicinity of a ditch of this type would have a tendency to cause the bank to cave in.

Several of the assignments charge error in refusing to give defendant's requested affirmative charges with hypothesis as to the complaint and each count separately. In support of these, it is argued that defendant owed no duty to plaintiff because the premises were not inherently dangerous; that defendant had no duty to protect employees of a sub-contractor from open and obvious dangers on the premises; that plaintiff did not carry his burden of proving the ditch to be unsafe; that no evidence was introduced casting a duty on defendant to erect supports or walls on the sides of the ditch; and that there was an assumption of risk and contributory negligence on the part of plaintiff.

The defendant, as a general contractor, was in control of and occupied the premises, so far as concerns any question here presented, the same as if it were the owner. There is no dispute concerning plaintiff's status as an invitee of defendant. The duty owed by defendant, as invitor, to plaintiff, as its invitee, has been stated in a number of this court's decisions. See: Kittrell v. Alabama Power Co., 258 Ala. 381, 383, 63 So.2d 363; First National Bank of Mobile v. Ambrose, 270 Ala. 371, 373–374, 119 So.2d 18; Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 63, 173 So. 388; Prudential Ins. Co. of America v. Zeidler, 233 Ala. 328, 331, 171 So. 634; Alabama Power Co. v. McIntosh, 219 Ala. 546, 550, 122 So. 677; Tennessee Coal Iron & R. Co. v. Burgess, 158 Ala. 519, 524–525, 47 So. 1029; Alabama Steel and Wire Co. v. Clements, 146 Ala. 259, 40 So. 971; Geis v. Tennessee Coal, Iron and Railroad Company, 143 Ala. 299, 302–303, 39 So. 301; Sloss Iron & Steel Co. v. Tilson, 141 Ala. 152, 37 So. 427. From the first cited case (258 Ala. at 383, 63 So.2d at 363), is the following:

"The duty of defendant [invitor] was to use ordinary or reasonable care to keep its premises in a reasonably safe condition. It was not an insurer of the safety of its guests or invitees. The

principle of *res ipsa loquitur* does not apply. F. W. Woolworth Co. v. Ney, 239 Ala. 233, 194 So. 667; Ten Ball Novelty & Mfg. Co. v. Allen, 255 Ala. 418, 51 So.2d 690; Britling Cafeteria Co. v. Naylor, 254 Ala. 84, 47 So.2d 187, and cases cited.

"Defendant is required to exercise reasonable care before its invitee comes to his premises to have the premises reasonably free from danger to the invitee when he arrives and to so keep the premises while the invitee is on the premises where he may be expected or was invited to go. Britling Cafeteria Co. v. Naylor, supra."

The following is from Lamson & Sessions Bolt Co. v. McCarty, supra (234 Ala. at 63, 173 So. at 391):

"This court is firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. Geis v. Tennessee Coal, Iron & R. R. Co., 143 Ala. 299, 39 So. 301 [supra].

"This rule, as was held in the case of Farmers' & Merchants' Warehouse Co. v. Perry, supra [218 Ala. 223, 118 So. 406], also includes (a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of which the invitee is ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation."

The principle is thus stated in the *Zeidler* case, supra, 233 Ala. at 331, 171 So. at 636:

"The general duty imposed by the law on the owner of premises is to be reasonably sure that he is not inviting another into danger, and to exercise ordinary care and prudence to render and keep his premises in a reasonably safe condition for invitees. * * *"

From *Burgess*, supra, 158 Ala. at 524–525, 47 So. at 1031, is the following:

"* * * In Cooley on Torts we find that the duty which the law imposes upon the owner or occupant of premises to a person who enters thereon by invitation is outlined as the 'exercise of ordinary care and prudence to render the premises reasonably safe.' Pages 604, 607. In Cyc. the duty of the owner of premises to one there by invitation is thus stated: 'The owner or occupant of premises, who induces others to come upon it by invitation, express or implied, owes to them the duty of using reasonable or ordinary care to keep the premises in a safe and suitable condition, so that they will not be unnecessarily or unreasonably exposed to danger.' 29 Cyc. 453; 21 Am. & Eng.Ency.Law (2d Ed.) 471 (4). This is also the rule in this jurisdiction. O'Brien v. Tatum, 84 Ala. 186, 4 South. 158; Sloss, etc., Co. v. Tilson, 141 Ala. 152, 37 South. 427; Alabama, etc., Co. v. Clements, 146 Ala. 259, 266, 40 South. 971, and cases there cited.

"It is obvious that the duty must vary according to the character of the danger, the nature of the premises, and the circumstances under which they are to be visited. [See: United States Cast Iron Pipe & Foundry Co. v. Fuller, 212 Ala. 177, 179, 102 So. 25]. In the present case, manifestly, the duty did not end when plaintiff entered the premises, because, forsooth, at that time they were in a reasonably safe condition. * * *"

I.

Appellant charges error in overruling its demurrer to count 1, the insistence being

that the demurrer should have been sustained because, as stated in ground 8, "the pleader sets out acts constituting the negligence, and the acts as set out do not constitute negligence." In support of this, appellant argues that a complaint which avers the particular act or acts constituting the quo modo of the alleged negligence is insufficient when the facts set out do not in themselves constitute negligence.

Count 1 first sets forth facts showing plaintiff to be an employee of an independent contractor engaged in constructing a manhole in an open ditch, the ditch having been dug by the defendant, the primary contractor, for the purpose of installing a sewer line. The count then avers that plaintiff was injured when one of the walls or sides of the ditch gave way or caved in. Next, it sets forth plaintiff's injuries and then concludes with the following paragraph:

"And plaintiff avers that all of his said injuries and damages were caused as a proximate result of the negligence of the defendants in negligently failing to provide supports or other devices to maintain the walls or sides of said excavation in place and to prevent the same from giving way or caving in at said time and place."

The sufficiency of complaints charging negligence has given rise to many cases coming before this court. In Alabama Baptist Hospital Board v. Carter, 226 Ala. 109, 112, 145 So. 443, 444, we stated the following guidelines in drafting such complaints:

" * * * '[W]hen a complaint for personal injuries specifies particular acts or omissions of the defendant as constituting the negligence upon which the action is founded, the complaint is insufficient on apt demurrer, unless such acts in themselves show or suggest negligence, and a general averment of negligence does not cure the defective specification.' Birmingham Ry., L. & P. Co. v. Barrett, 179 Ala. 274, 279, 60 So. 262, 263.

"And if the alleged acts in themselves do not constitute negligence as a matter of law, but are merely sufficient to suggest and to support an inference of negligence, the complaint must characterize the acts as negligence, and it is not enough that negligence be merely assumed. * * *"

From Weston v. National Manufacturers & Stores Corporation, 253 Ala. 503, 510, 45 So.2d 459, 464, is the following:

"Negligence may be averred in a very general way, and the quo modo of the negligence need not be defined. * * *

"If the alleged acts or omissions do not of themselves constitute negligence as a matter of law, but are sufficient to suggest and support an inference of negligence, the complaint must allege negligence, the plaintiff assuming the burden to prove negligence in the particular case. * * *"

In the recent case of Alabama Power Co. v. King, 280 Ala. 119, 190 So.2d 674, the authorities dealing with this problem were reviewed and the conclusion was reached that use of the word "negligently" in describing the doing of an act complained of is essential to show a breach of duty unless the words describing the act of a defendant show in themselves negligent conduct, or show an act negligent as a matter of law.

The averments of count 1 are clearly insufficient to show, in themselves or as a matter of law, negligent conduct by defendant. However, we believe the allegations are sufficient to "suggest and support an inference of negligence." The duty owed plaintiff by defendant is established from the allegations showing plaintiff to be an invitee of the defendant. Plaintiff's averment that defendant negligently failed to provide supports, etc., is sufficient to show the necessary breach of duty.

## II.

■ There is no question that defendant had the duty of exercising reasonable or ordinary care to keep the premises in a reasonably safe condition for the employees of the sub-contractor.

Appellant argues that there was no evidence to support count 1 and that the court erred in refusing to give the requested affirmative charge as to that count.

■ It is our opinion that the evidence recited supra furnishes at least a scintilla to support a finding that appellant was negligent in failing to provide supports or other devices to maintain the sides of the ditch and "to prevent the same from giving way or caving in at said time and place."

Sufficient evidence having been presented to the jury to support count 1, the trial court did not err in refusing the affirmative charge as to that count.

■ It is also our view that there was ample evidence, if believed by the jury, to support the verdict under count 2.

First, the operation of heavy dump trucks within only 3 or 4 feet of the sides of the ditch presented hazards not reasonably to be anticipated by the plaintiff when he entered the ditch. It was for the jury to resolve the conflicting evidence as to whether the trucks were being operated *before* plaintiff went into the ditch, so as to make their operation an open and obvious danger to plaintiff, or whether their operation was started *after* plaintiff went into the ditch and prior to the collapse of the sides, so as to make their operation a possible hidden danger of which the defendant was charged with the duty of warning plaintiff, or whether any trucks were being operated near the sides of the ditch that morning. There is testimony indicating that the running of heavy trucks near the sides of an excavation, such as this, would be a danger-ous practice and would have a tendency to make the sides cave in. There is evidence from which the jury could find that plaintiff was not aware of this hazard prior to going into the ditch. There is no evidence of anyone giving plaintiff any notice or warning of such hazard.

Next, there is the evidence that dynamite charges were set off on the morning of the accident and just before the cave-in occurred; that the blasting was of such force as to lift the backhoe, weighing about 50 tons, off the ground; and that the dynamiting, coupled with the driving of trucks near the edge of the ditch, would have a tendency to collapse the sides of the ditch. It was for the jury to accept, or not to accept, the defendant's evidence that there was no blasting done on the morning of the accident.

Third, there is the evidence that the backhoe was being operated within 50 to 75 feet from where plaintiff was engaged in constructing the manhole, and that its operation caused the ground to vibrate.

As already noted, there is evidence that both plaintiff and his employer, McGinnis, conducted a visual examination of the sides of the ditch and even walked around it stamping on the sides before they went down into the excavation to commence work on the manhole. Of the three forces relied on by plaintiff as having caused the cave-in, only one (operation of the backhoe) was undisputedly in operation before he got down in the ditch. The evidence is in conflict as to whether the trucks were operating and the blasting was being done before plaintiff got in the ditch. It thus became a factual question as to whether the dangers present in this situation were open and obvious or whether they were hidden and therefore required a warning to plaintiff by defendant. Furthermore, it was for the jury to determine whether these operations reasonably could have been foreseen by defendant as tending to loosen the soil and weaken the sides of the ditch so as to re-

quire defendant to take measures to either warn plaintiff of the danger or to discontinue such operations while plaintiff was working in the ditch.

The following from First National Bank of Mobile v. Ambrose, 270 Ala. 371, 375, 119 So.2d 18, 22, supra, is also applicable to the situation here:

"Whether there is negligence on the part of an invitor or invitee necessarily depends upon all the facts and circumstances in each particular case. While there is not a great deal of evidence bearing on the negligence of the parties, we think it was sufficient to present a question for the jury to determine whether the defendant exercised toward the plaintiff the degree of care to which she was entitled and whether plaintiff was guilty of contributory negligence in failing to exercise reasonable care for her own safety, * * *."

Defendant argues that, even if it should be found guilty of negligence, plaintiff's contributory negligence bars him from recovery and that it was error to refuse defendant's requested affirmative charge for this reason. The elements of contributory negligence here applicable were stated in Foster & Creighton Co. v. St. Paul Mercury Indemnity Co., 264 Ala. 581, 589, 88 So.2d 825, 832, to be as follows:

"The three elements essential to contributory negligence in cases of this kind are that the party charged with contributory negligence not only (1) had knowledge of the condition or failure, yet (2) appreciated the danger under the surrounding conditions and circumstances and did not (3) exercise reasonable care in the premises, but with such knowledge and appreciation, put himself into the way of danger. * * *"

The issue of contributory negligence is for the jury's determination (F. W. Woolworth Co. v. Bradbury, 273 Ala.

392, 396, 140 So.2d 824) unless "the evidence of contributory negligence is entirely free of doubt or adverse inference" (Yates v. De Mo, 270 Ala. 343, 345, 118 So.2d 924, 926). Such freedom from doubt is not present in the case before us.

No reversible error having been called to our attention, the judgment is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON, MERRILL, COLEMAN and HARWOOD, JJ., concur.

GOODWYN, J., concurs in part and dissents in part.

GOODWYN, Justice (concurring in part and dissenting in part).

I concur in the opinion except as to the holding that there is a scintilla of evidence to support count 1 and that it was not error to refuse defendant's requested affirmative charge as to that count. My view is that there is an absence of proof of the material averments of count 1 that defendant was negligent in "failing to provide supports or other devices to maintain the walls or sides of said excavation in place and to prevent the same from giving way or caving in at said time and place." The opinion does not point out, and I fail to find, evidence, or reasonable inference from evidence, that defendant had the duty of providing such supports or devices or that shoring up or supporting the walls of the ditch would have prevented the cave-in. My view is that defendant's requested affirmative charge as to count 1 should have been given.

In view of the court's holding with respect to count 1, there is no occasion to discuss whether a contrary holding would have resulted in a referral of the verdict to count 2 or a reversal of the judgment.