Appeal by plaintiff, Michael Jerome Secrist, from summary judgment for defendant, Mark IV Constructors, Inc. (Mark IV). We affirm.
Defendant Mark IV was the general contractor constructing a building on the campus of Jefferson Davis Junior College in Brewton. Progressive Roofing and Fine Sheet Metal Company, Inc., (Progressive) was the subcontractor engaged by Mark IV to perform certain roofing and sheet metal work on the building. Plaintiff Secrist was an employee of Progressive working on the job at Jefferson Davis Junior College. While in the process of moving toeboards once used by Progressive employees to aid in the application of shingles to the building's roof, Secrist fell and was injured. Plaintiff Secrist filed a complaint against Mark IV and also against several co-employees. Following further pleading and discovery, Mark IV moved for summary judgment, based upon "the pleadings, the depositions on file, the discovery requests and the responses thereto," and a brief in support of the motion. In due course, the trial court, in an order made final pursuant to Rule 54 (b), A.R.Civ.P., granted summary judgment in favor of Mark IV. Plaintiff appeals from that summary judgment.
The familiar principle applicable to summary judgment is stated in Bryant v. Morley, 406 So.2d 394, 395 (Ala. 1981):
 "Under Rule 56, ARCP, summary judgment is appropriate only when the moving party has demonstrated that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Whatley v. Cardinal Pest Control, Ala., 388 So.2d 529 (1980). . . ."
Or, as stated in Campbell v. Southern Roof Deck Applicators,Inc., 406 So.2d 910, 913 (Ala. 1981):
 "The movant for summary judgment has the burden of showing the absence of any genuine issue of material fact, and the record must be viewed in a light most favorable to the party opposing the motion. Rule 56, ARCP; Papastefan v. B L Construction Co. of Mobile, Ala., 356 So.2d 158 (1978). In other words, on motion for summary judgment the movant must demonstrate that if the case went to trial there would be no competent evidence to support a judgment in favor of the other side and, therefore, *Page 1017 
that a trial is useless. Logan v. Beuttner, Ala., 342 So.2d 352 (1977), citing Wright Miller, Federal Practice and Procedure, Civil § 2727. . . ."
According to plaintiff's brief:
 "There is no real dispute among the parties as to the facts which gave rise to the plaintiff's injuries in this case. He was working as a roofer, and was in the process of roofing a new building being constructed on the Jefferson Davis State Junior College campus. The slope of the roof was an exact forty-five degree angle — that is, for every one foot of horizontal distance in the roof there was a corollary one foot in rise. At the time of his fall, Mr. Secrist was standing on a toeboard constructed of 2 x 4's, and suspended from the peak of the roof by copper straps. Because of the fact that the roof had already been laid, it was necessary to use these boards to prevent any nails or similar materials from puncturing the existing roof and resulting in any leaks. Having completed the roofing process itself, these toeboards were being removed from the roof, starting at the top and working towards the bottom edge of the roof. While performing these duties, the toeboard on which Mr. Secrist was standing twisted, resulting in his losing his balance and falling from the roof to the ground. Furthermore, there is no dispute among the parties that no safety belts were being worn by the roofers, nor had they been provided for their use."
Plaintiff contends that the general contractor owed a duty to the employees of the subcontractor to exercise reasonable care to keep the premises of the job site in a reasonably safe condition, and further contends that summary judgment was inappropriate because the facts establish that the general contractor failed to furnish safety belts to the subcontractor's roofer, Secrist, as required by the condition of the roof in question. Plaintiff cites us to the cases of Southern Minerals Co. v. Barrett,281 Ala. 76, 199 So.2d 87 (1967), and Knight v. Burns, Kirkley Williams Construction Co., 331 So.2d 651 (Ala. 1976), as authority for this position.
In the Southern Minerals case, an employee of a subcontractor was engaged as a brickmason's helper in constructing a manhole in a sewer line which had been excavated by a general contractor. The walls of the excavation caved in, injuring the subcontractor's employee, who subsequently brought an action against the general contractor for negligently failing to provide a reasonably safe place for the employee to work. That decision explained the legal relationship of the general contractor to the employee of a subcontractor and the duty owed by the former to the latter, at 281 Ala. 80-81, 199 So.2d 90-91:
 "The defendant, as a general contractor, was in control of and occupied the premises, so far as concerns any question here presented, the same as if it were the owner. There is no dispute concerning plaintiff's status as an invitee of defendant. The duty owed by defendant, as invitor, to plaintiff, as its invitee, has been stated in a number of this court's decisions. See: Kittrell v. Alabama Power Co., 258 Ala. 381, 383, 63 So.2d 363 [1953]; . . . From [Kittrell] (258 Ala. at 383, 63 So.2d at 363), is the following:
 "`The duty of defendant [invitor] was to use ordinary or reasonable care to keep its premises in a reasonably safe condition. It was not an insurer of the safety of its guests or invitees. The principle of res ipsa loquitur does not apply. [Citations omitted.]
 "`Defendant is required to exercise reasonable care before its invitee comes to his premises to have the premises reasonably free from danger to the invitee when he arrives and to so keep the premises while the invitee is on the premises where he may be expected or was invited to go. [Citation omitted.]'
 "The following is from Lamson Sessions Bolt Co. v. McCarty, (234 Ala. [60] at 63, 173 So. [388] at 391 [1937]): *Page 1018 
 "`This court is firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who c0ome thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in [any] respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. [Citation omitted.]
 "`This rule, as was held in the case of Farmers' Merchants' Warehouse Co. v. Perry, [218 Ala. 223, 118 So. 406 (1928)], also includes (a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of which the invitee is ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation.'
 "The principle is thus stated in the [Prudential Ins. Co. of America v.] Zeidler case, 233 Ala. [328] at 331, 171 So. [634] at 636 [1936]:
 "`The general duty imposed by the law on the owner of premises is to be reasonably sure that he is not inviting another into danger, and to exercise ordinary care and prudence to render and keep his premises in a reasonably safe condition for invitees. * * *'"
In support of his contention that the roof was a dangerous condition requiring the use of a safety belt, plaintiff quotes from the deposition of Harvey Hill, a former employee of Progressive Roofing on the Jefferson Davis Junior College job:
 "Q. What type of roof was this that you all were working on? Did it have some sort of nomenclature or descriptive term about it that would tell us what type roof we are talking about?
"A. Well . . .
 "Q. I am talking about the slant and pitch of the roof, now?
 "A. Oh, yeah. It looked to me like a twelve on twelve, you know, like that.
 "Q. Twelve on twelve, as I understand it from the roofing industry and the roofing people and from Mr. Satterwhite whom we have deposed earlier, is basically a forty-five degree pitch roof?
"A. Right. Easily that.
 "Q. Now, let me ask you this: In the roofing industry, is that a steep roof or a shallow pitch roof or what?
 "A. It's steep, it's steep. It requires safety belts.
 "Q. Now, you say it requires safety belts. What do you mean by that?
 "A. Well, I mean it would take a dumb person to get out there without any kind of safety equipment on like that.
"Q. Even with toeboards up there?
 "A. Oh, yeah. The way we had them set up, sure. Maybe if we had bigger boards or something, it might not have been, but, yeah, I would say you would need a safety belt at all times. There's no telling, you can't depend on a board.
 "Q. Are there shallower pitched roofs, Mr. Hill, that you wouldn't use a safety belt on or that it wouldn't be required on?
 "A. Right. Four on twelve to a five on twelve pitch, you wouldn't need anything. Anything like a six on up, everything would have to be anchored down to keep it from sliding off.
". . .
 "Q. It's been previously testified to in this case that the only kind of safety devices needed on a roof of this nature, a forty-five degree pitch roof, would be the presence of the toeboards, themselves, and the scaffolding which would be erected around the edges. Based on your experience in the roofing industry and the number of years you have had there with you and your father before you being involved in the roofing industry, would you tell me whether that is an accurate observation?
"A. No, sir, it's not.
"Q. Why? *Page 1019 
 "A. Because that roof is just too steep. You just couldn't keep things on it. You couldn't stay on it yourself. Those toeboards were the only thing holding us up there and they just weren't sufficient."
Plaintiff contends that the accepted standard in the roofing industry required that safety belts be used on this particular job, and that this was brought to the attention of the on-site supervisor for Mark IV, who thereafter failed to take the necessary action in providing safety belts. Both Hill and plaintiff Secrist deposed that they asked this supervisor, John Peavy, for the safety belts. Plaintiff stated:
 "Q. Did you ever see a man named John Peavy on the site?
 "A. I don't know for sure if that was his name. I'm pretty sure it was.
 "Q. Did you see somebody who you understood to be the supervisor for Mark IV Constructors?
"A. Yes, sir. Seen him all the time.
 "Q. All right, sir. Did you ever have any contacts or dealings with him?
 "A. Not personally. Me and Harvey one time had asked him and Jim for safety belts. I mean, we'd talked to him about the use of safety belts.
"Q. Talked to who about that?
"A. Jim and the supervisor for Mark IV.
". . .
"Q. Who were you making the request of?
 "A. Jim Ward, I guess. I mean he was the man I talked to."
According to plaintiff, Peavy acknowledged in his deposition his authority to oversee the general safety of the job:
 "Q. As a construction man then with eighteen years of experience in the industry and five years for this employer and two years as the Vice President of Operations for Mark IV, do you have an opinion just from a position of logic as to whether or not if an individual had a safety belt on working on a forty-five degree pitched roof with a line tethered to that safety belt over the pitch of the roof and being held and maintained by a spotter on the other side of the roof in a position so that it gives him an effective tether down to him, if such an individual then had a toeboard to rotate on or counterbalance on him in such a manner as to cause him to fall off the toeboard and lose his footing on the toeboard, do you have an opinion as to whether or not that safety belt and tether would provide him with a greater margin of safety and prevent him from falling?
 "MR. PATRIDGE: I object to the form of the question.
"MR. CLEMENTS: Same objection.
"MR. BROWN:
"Q. You can answer.
"A. Probably.
". . .
 "Q. . . . My question is did you have the authority as a job superintendent to require the foreman for the various subcontractors to provide that equipment for their workmen or else get off your job?
"A. If I felt it's needed."
With respect for plaintiff's argument, nevertheless, the authority which Mr. Peavy possessed in this relationship with his own employer does not furnish the answer to the basic legal question posed by these facts, i.e., what was the legal relationship between Mark IV and Secrist? The answer lies in the analysis of their respective positions as invitor and invitee, as discussed in Southern Minerals, supra. As invitor, Mark IV, the general contractor, was under a duty to have the premises free from danger, or if they were dangerous, to give his invitee, Secrist, sufficient warning to enable him, through the exercise of reasonable care, to avoid the danger. This duty includes the duty to warn the invitee of danger of which the invitor knows or ought to know, and of which the invitee does not know. Authorities cited, supra.
It is well settled that "an owner [general contractor] is not responsible to an independent contractor [subcontractor] for injury from defects or dangers which the contractor *Page 1020 
knows of, or ought to know of. If the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor and if he does not do this, of course, he is liable for resultant injury." Veal v. Phillips, 285 Ala. 655, 657-8,235 So.2d 799, 802 (1970). This principle was applied in Quillen v.Quillen, 388 So.2d 985, 989 (Ala. 1980), which quoted the rule applicable to an invitor-invitee relationship:
 "As stated by the Court in Lamson Sessions Bolt Co., 234 Ala. [60] at 63, 173 So. [391] at 391:
 "`In 45 C.J. § 244, p. 837, the rule is thus stated: "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care."'
 "Accord, McRee v. Woodward Iron Co., 279 Ala. 88, 182 So.2d 209 (1966); Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412 (1954). The entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries. Gray v. Mobile Greyhound Park, Ltd., 370 So.2d 1384
(Ala. 1979); Tice v. Tice, 361 So.2d 1051 (Ala. 1978). Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable."
From the material before the trial court and furnished by the plaintiff himself, the dangerous slope of the roof in question, and any concommitant need for safety belts while working thereon, was at the very least as well known to the plaintiff as it was to the general contractor. It certainly was not a danger unknown to the employee-invitee, for he was one of those who called it to the attention of his own employer's foreman, Jim Ward. Plaintiff's own deposition established that it was Progressive's foreman, Ward, who decided that safety belts would not be used:
 "Q. Do you recall any specific quotes, anything anybody said during that conversation?
 "A. Jim [Ward] said the reason we couldn't use them [safety belts], [was] because it would slow us down too much.
"Q. He said you couldn't use them?
 "A. Well, he said we didn't need to use them, that it would slow down the progress of the job, and it was slow enough as it was."
If, therefore, the slope of the roof constituted a dangerous condition, under the facts of this case, it was an open and obvious danger which the plaintiff should have recognized and, in fact, did recognize. Under those facts, the general contractor cannot be held liable for the injuries plaintiff sustained when he fell from that roof.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.