594 So.2d 635 (1992)
Ray GOSSETT and Amy Gossett
v.
TWIN COUNTY CABLE T.V., INC., and Ron Nunnelly d/b/a Southeastern Communications.
1901088.
Supreme Court of Alabama.
February 14, 1992.
*637 P. Russell Tarver of Cherry, Givens, Tarver, Peters, Lockett & Diaz and Elizabeth R. Jones, Birmingham, for appellants.
Michael S. Jackson of Beers, Anderson, Jackson & Smith, P.C. and Randall Morgan of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, for appellees.
KENNEDY, Justice.
Ray Gossett and Amy Gossett sued Twin County Cable T.V., Inc. ("Twin County"), Ron Nunnelly d/b/a Southeastern Communications ("Nunnelly"), Cornelius Maddox, Time Manufacturing Company, Inc., Easley Equipment Company, Inc., and various fictitiously named parties on claims by Mr. Gossett of negligence and product defects and on a claim by Mrs. Gossett of loss of consortium.
With respect to Nunnelly and Twin County, the Gossetts alleged that Mr. Gossett ("Gossett") was an employee of Nunnelly and an employee/servant of Twin County. Gossett averred that these relationships imposed on Nunnelly and Twin County a duty to maintain a safe workplace for Gossett, that they had breached that duty, and that the breach had resulted in injury to Gossett. Both Nunnelly and Twin County moved for a summary judgment, alleging that Gossett had been contributorily negligent.
The trial court held that Gossett was an employee of Nunnelly, but an independent subcontractor of Twin County. The trial court further held that Gossett was the cause of his own injuries and entered a summary judgment for Nunnelly and a summary judgment for Twin County. Those judgments were made final pursuant to Rule 54(b), A.R.Civ.P., and from those judgments Gossett appeals.
Undisputed evidence in this case discloses that Gossett worked for Nunnelly, the owner of Southeastern Communications. In turn, Nunnelly's company was engaged by Twin County to work on the installation of a cable television system in Montgomery County. Nunnelly's crew on this project consisted of himself, Gossett, and Ray Salter.
On August 28, 1988, Nunnelly, Gossett, and Salter were on a job site splicing cable and running cable to houses. Nunnelly became ill and left the job site for the day, giving specific instructions to Gossett that he was not to "run cable strand." This task involved attaching a cable strand to a telephone pole and then stringing the cable strand between adjacent poles. Nevertheless, after Nunnelly left the job site Gossett began to "run cable strand." Gossett's reason for doing this is disputed. Gossett testified that after Nunnelly departed, Twin County's sole representative on the site, Bob Garner, became agitated when Gossett told Garner that he was not to run cable strand at that job site. Gossett testified that Garner was "the main boss" on the project and that Garner ordered him to run cable strand anyway. Nunnelly testified that he had previously advised Garner that his crew would not run cable strand at that site. Garner said he did not recall either conversation. It is not disputed that at the time of the accident Gossett was engaged in the forbidden activity of running cable strand at that site.
Specifically, Gossett parked his truck, which was equipped with a lift bucket, beside a telephone pole along a roadway and then entered the lift bucket with some cable strand. The cable strand was positioned across the roadway toward a second pole, and then under Gossett's truck, and from there it was looped loosely in front of Gossett in the lift bucket. Gossett engaged the lift bucket, which then climbed to a height that reached the uppermost portion of the pole. At this point, one end of the cable was in front of Gossett in the lift bucket and it ran under his truck and across the roadway to the other end. To prepare the pole for the attachment of the cable strand, Gossett began drilling a hole through the pole. At that time Salter was on the ground below Gossett to act as a traffic flagman along the roadway, although he held no flag. In addition, two orange safety cones had been set out to alert traffic. The evidence was disputed as to whether Gossett and Salter had available any additional safety devices.
*638 Gossett testified that as an alternative to taking the cable strand up in the bucket to await attachment while he prepared the pole, he could have first prepared the pole without the cable strand in the bucket and then descended to pick up the cable strand once the pole was ready. This method would have reduced the time the cable strand was in front of his body awaiting placement.
As Gossett was drilling the hole, a recreational vehicle drove over the cable strand in the roadway, accidentally snagging the cable strand and, in turn, causing the cable strand to tighten in front of Gossett. The ensnared cable strand then pulled Gossett from the bucket to the pavement below as the recreational vehicle continued down the roadway with the cable strand attached to its under-carriage. As a result, Gossett suffered substantial physical injuries.
On Nunnelly's and Twin County's respective motions for summary judgment, the trial court held that there existed no genuine issue of material fact and ruled on matters of law in favor of Nunnelly and Twin County.
The standard for granting a summary judgment motion is that the court must conclude "that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." A.R.Civ.P. 56(c). The burden of establishing that there exists no genuine issue of material fact is on the moving party. Once the moving party has made a prima facie showing that there is no genuine issue of material fact, the burden shifts to the opposing party to establish a genuine issue of material fact. Stephens v. City of Montgomery, 575 So.2d 1095, 1097 (Ala.1991).
In cases commenced after July 11, 1987, as was this case, in order to survive a defendant's motion for summary judgment, a plaintiff must overcome the defendant's prima facie showing by the plaintiff's own showing of "substantial evidence." Ala. Code 1975, § 12-21-12. This Court has defined "substantial evidence" as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
No presumption of correctness attaches to a summary judgment, and our review of such a judgment is de novo. Hightower & Co. v. United States Fidelity & Guar. Co., 527 So.2d 698 (Ala.1988).

Issues relating to Nunnelly
Gossett argues that the trial court erred in entering the summary judgment for Nunnelly because, Gossett says, as a matter of law it was foreseeable by Nunnelly that Gossett would disobey his instructions and, therefore, Gossett says, Nunnelly had a duty to take appropriate steps to create safe work conditions through training, supervision, and adequate traffic controls. However, we find no evidence that Gossett's actions were foreseeable by Nunnelly, and thus no evidence that Gossett was within the sphere of his employment with Nunnelly at the time of the accident.
Nunnelly's only knowledge that Gossett had accepted direction from Garner previously related to the tasks of wiring houses or unloading a truck. This had occurred infrequently. Gossett had not previously run cable strand on the project, and Nunnelly, on the day of the accident, had specifically told him not to. The evidence was that Gossett was a "good worker" and had always followed Nunnelly's instructions. There was no evidence to suggest that Nunnelly should have foreseen that Gossett would disobey the direct order not to run cable strand.
Wilful violations of an employer's orders limiting the sphere of the employee's employment can create a bar to recovery. Johnson v. Brinker, 289 Ala. 240, 243, 266 So.2d 851 (1972) (analyzing the statutory codification of this common law rule).
If an employee "voluntarily undertakes to do work about which he had no duties to perform by virtue of the contractual *639 relation existing between him and his employer, then, while such condition exists, the duty ... of using care for [the employee's] safety does not rest on the employer." Southern Ry. v. Guyton, 122 Ala. 231, 240, 25 So. 34, 37 (1899).
In the present case, it is undisputed that Nunnelly specifically limited the sphere of Gossett's employment on the day of the accident to tasks other than running cable strand. Gossett wilfully undertook to run cable strand anyway. In so doing, Gossett went outside the sphere of his employment, and Nunnelly, therefore, was absolved of a duty to provide him a safe workplace at the time of the accident. See, Doby v. Layton, 210 Ala. 303, 305, 98 So. 9 (1923).

Issues relating to Twin County
Gossett argues that the trial court erred in entering the summary judgment in favor of Twin County because, he argues, he presented sufficient evidence to create a jury question on the issue of Twin County's duty to provide a safe workplace and the issue of contributory negligence. We agree.
First, Gossett contended in the trial court that the relationship between him and Twin County was that of servant and master, thereby charging Twin County with a duty to provide a reasonably safe workplace. We have stated:
"Under the common law the master is responsible for his own negligence and want of care and this may appear from his failure to furnish proper machinery and materials for the work, or from the employment of incompetent servants, or from a failure to make proper rules or establish a proper method for the conduct of his business."
Chamberlain v. Southern Ry., 159 Ala. 171, 175, 48 So. 703 (1909). An employer/master has a duty to provide employees/servants with a reasonably safe work environment; this duty exists both by statute and under the common law. See, Bellew v. Sloan, 536 So.2d 917, 918 (Ala.1988).
However, if one stands in the relationship of a subcontractor to a general contractor at a job site, the general contractor, as an invitor, has only a duty to protect the subcontractor invitee from defects or dangers that are hidden from the subcontractor and about which the general contractor either knows or ought to know. Secrist v. Mark IV Constructors, Inc., 472 So.2d 1015, 1019 (Ala.1985).
Thus, it is necessary to determine whether Twin County and Gossett were general contractor and subcontractor or were master and servant before one can determine what duty Twin County owed to Gossett.
Proof of a master and servant relationship is tested by the degree of control the alleged master retains over the alleged servant. Sufficient control to establish a master/servant relationship exists where the alleged master retains the right to control the manner in which the alleged servant conducts the work. Solmica of the Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638 (1970). Where the alleged master retains merely the right to inspect the work as it progresses, in order to ascertain if it is completed according to plans or specifications, and the right to stop work improperly done, the master and servant relationship is not created. Pate v. United States Steel Corp., 393 So.2d 992, 995 (Ala.1981). In addition, "[i]t is the reserved right of control rather than its actual exercise that furnishes the true test of whether the relation between the parties is that of an independent contractor or of employer and employeemaster and servant." Hodges & Co. v. Albrecht, 288 Ala. 281, 284, 259 So.2d 829 (Ala.1972).
On the issue of the degree of Twin County's control over Gossett, it was disputed whether Twin County's representative, Garner, ordered Gossett to run the cable strand. Moreover, there existed discrepancies in the testimony of Gossett, Nunnelly, and Garner with respect to a payment made by Garner to Gossett on the day of the accident. Garner testified that he wrote Gossett a check for $100 prior to the accident so that Gossett would have "gas money." Both Nunnelly and Gossett *640 put the amount of the check at $250, or a week's wages. Gossett also testified that Garner had, on several occasions, given him direct instructions and orders. Garner testified that he merely assigned tasks to subcontractors and reviewed their progress. These discrepancies created genuine issues of material fact on the issue of whether Gossett was a servant of Twin County at the time of the accident.
Moreover, viewing the evidence most favorably to Gossett, one could logically infer that Gossett was the servant of Twin County in running the cable strand and that Twin County breached a duty to provide Gossett with safe working conditions.
Thus, the trial court erred in concluding that Gossett was an independent subcontractor in relation to Twin County as his general contractor at the time of the accident. This was a jury question. Therefore, the trial court's conclusion that Twin County breached no duty to Gossett, as based on the legal standards applicable to a general contractor and subcontractor relationship, is equally flawed.
Finally, we also agree with Gossett that the trial court could not properly base the summary judgment for Twin County on a conclusion that Gossett was contributorily negligent as a matter of law.
In Empiregas, Inc., of Belle Mina v. Suggs, 567 So.2d 271 (Ala.1990), we stated the following about contributory negligence:
"`In order to sustain a finding of contributory negligence as a matter of law, there must be a finding that the plaintiff put himself in danger's way, Mackintosh Co. v. Wells, 218 Ala. 260, 118 So. 276 (1928), and a finding that the plaintiff appreciated the danger confronted, Wilson v. Alabama Power Co., 495 So.2d 48 (Ala.1986); Marquis v. Marquis, 480 So.2d 1213 (Ala.1985); Baptist Medical Center v. Byars, 289 Ala. 713, 271 So.2d 847 (1972); Mackintosh v. Wells, supra. Moreover, it must be demonstrated that the plaintiff's appreciation of the danger was a conscious appreciation at the moment the incident occurred. Marquis v. Marquis, supra; Elba Wood Prod., Inc. v. Brackin, [356 So.2d 119 (Ala.1978)]. Mere `heedlessness' is insufficient to warrant a finding of contributory negligence as a matter of law. Decatur Light, Power & Fuel Co. v. Newsom, 179 Ala. 127, 59 So. 615 (1912).'"
567 So.2d at 273 (quoting Central Alabama Elec. Coop. v. Tapley, 546 So.2d 371, 381 (Ala.1989)).
In the present case, the evidence, taken in a light most favorable to Gossett, indicated that he was merely heedless in carrying the strand cable up before the pole was prepared or in failing to ensure that adequate traffic safety controls were in place.
In addition, the record discloses conflicting evidence as to whether Gossett appreciated the danger of his actions at the moment the accident occurred.
Gossett testified that it is safer to prepare the pole and then return to the ground to pick up the cable strand to be attached, rather than to do as he did, i.e., to carry the strand up on the trip to prepare the pole. However, he testified that he had seen cable technicians do it both ways and that he believed that it was acceptable practice to carry the cable strand up initially. The evidence was disputed as to what would have been reasonably acceptable practice. Further, the evidence indicated that at the time of the accident Gossett's attention was on preparing the pole, while Salter was on the ground attending to traffic control. From the evidence, one might logically infer that Gossett, at the moment of the accident, lacked an appreciation of any danger posed by his actions in relation to traffic control and traffic passing below him.
Unless the evidence submitted on a summary judgment motion is wholly without adverse inferences or is free from any doubt, summary judgment must not be entered, but the issues must be submitted to the jury. Yates v. De Mo, 270 Ala. 343, 345, 118 So.2d 924 (1960). We find that the evidence respecting Twin County is neither free from doubt on the issue of contributory negligence nor without inferences adverse to Twin County.
*641 Therefore, the judgment in favor of defendant Nunnelly is affirmed, and the judgment in favor of defendant Twin County is reversed and the cause is remanded for trial as to that defendant.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, STEAGALL and INGRAM, JJ., concur.
HOUSTON, J., concurs in part and dissents in part.
HOUSTON, Justice (concurring in part and dissenting in part).
I concur in that portion of the majority opinion affirming the summary judgment in favor of Nunnelly.
I dissent as to the reversal of the judgment in favor of Twin County and the remand.
I cannot comfortably hold that Gossett presented substantial evidence that he and Twin County were in a servant/master relationship to counter Twin County's substantial evidence that Gossett was an employee of an independent contractor. Twin County simply told Ron Nunnelly d/b/a Southeastern Communications where it wanted the cable installed, which happened to be along a public road. Twin County did not know or care to know the procedures or manner by which the cable equipment was installed by Nunnelly. Gossett was an employee of Nunnelly. I see no duty on the part of Twin County to provide Gossett a safe place to work. Furthermore, Twin County did not fail to provide Gossett a safe place to work, even if it had such a duty. No representative of Twin County was at the scene of the accident or supervised Gossett in any way. Robert Garner was a consultant hired by Twin County to oversee construction. At most, the evidence shows that Garner wanted Gossett to install the cable on a public street; there is no evidence that Garner or anyone at Twin County instructed Gossett to install it in the unorthodox way in which Gossett chose to install it. Gossett selected the method of installing the cable. Salter, an employee of Nunnelly, was present to act as a flag man, but was not asked to do so by Gossett. The method that Gossett selected, without the use of Salter as a flag man, was the sole reason that Gossett was injured. Twin County did not fail to provide Gossett a safe place to work. By Gossett's own testimony, the cable could have been installed without subjecting Gossett to the potential for injury to which Gossett, without the involvement of anyone else, subjected himself. Therefore, I would also affirm the judgment insofar as it relates to Twin County.